MARION F. EDWARDS, Chief Judge.
12Plaintiff/appeIlant, Nicolle Dugas Weaver (“Mrs. Weaver”), appeals a judgment of the district court denying her “Rule For Contempt Accumulated Child Support, To Make Past Due Support Exec-utory; To Increase Support Obligation, For An Income Assignment Order And For Attorney’s Fees And Costs.”
Mrs. Weaver and defendant/appellee, Ryan Joseph Weaver (“Mr. Weaver”), were divorced in 2005. Via two consent judgments, the parents were awarded joint custody of the two minor children with Mrs. Weaver designated as the domiciliary custodial parent. Child support was ordered to be paid by Mr. Weaver in the amount of $500 per month, retroactive to December 2004. Mr. Weaver was also ordered to pay Mrs. Weaver $800 every two weeks until arrearages of $2,500 had been satisfied.
In 2007, Mrs. Weaver filed a rule for contempt for failure to pay support, garnishment, income assignment, attorney’s fees, and other issues. Generally, Mrs. Weaver contended that Mr. Weaver had not paid child support in a timely fashion, and, at the time of the petition, he was in arrears in the amount of $1,000. | ¡¡She alleged that Mr. Weaver was in both civil and criminal contempt of court and asserted he should be punished under La. R.S. 13:4611, R.S. 9:315.32, and R.S. 9:315.36. for “his pattern of nonpayment of child support.” She additionally requested an increase in child support. Another consent judgment was entered into, evidenced in the record by the court minutes as dated January 30, 2008. The parties failed to file the written consent judgment; therefore, the terms of the 2008 judgment were not reduced to writing or signed by the trial court until July 15, 2011. However, according to the minute entry in 2008, Mr. Weaver was ordered, among other things, to pay $700 per month support, in increments of $350 on the first and fifteenth of each month “through an income assignment order through his employer.” Until the income assignment was in place, Mr. Weaver was to pay support directly to Mrs. Weaver. Arrearages were set in the amount of $100 to be paid within fourteen days of the judgment. Mr. Weaver was ordered to pay half of the children’s uncovered medical bills within thirty days of written notice sent by Mrs. Weaver. Mr. Weaver was ordered to provide proof of income, tax returns, and employer information to Mrs. Weaver’s counsel for purposes of the income assignment order. Contempt proceedings were waived upon compliance with the terms of the judgment.
*1118 On June 24, 2011, Mrs. Weaver filed the Rule at issue in the present appeal, urging that Mr. Weaver had not complied with the terms of either the 2005 or the 2008 judgments. She alleged that Mr. Weaver had not paid $1,000 of past due support due for September and October of 2007; that the support order of $500 per month due for November and December of 2007, and January of 2008, was not paid. (In a later paragraph, she stated that the $500 payments were not made for September 2007 through January 2008.) Mrs. Weaver further averred that the support award of $700 per month was never paid from February 2008 through |4October 2009 and that Mr. Weaver has paid the support due from November 2009 to the date of the petition, but such payments were inconsistent and untimely. Mrs. Weaver contended that Mr. Weaver never provided his income tax returns for 2006-2007, never provided his employer information, and never split the uncovered medical expenses, all as had been ordered in the previous consent judgments. She urged that Mr. Weaver was in violation of La. R.S. 14:74, criminal neglect of family, and requested the court impose a prison sentence. She further urged that Mr. Weaver was in civil contempt of court and asked for attorney’s fees, expenses, and penalties, including fíne and imprisonment, under La. R.S. 13:4611; for suspension of his driver’s license under R.S. 9:315.32 and 9:315.36; for judicial interest; for income assignment and garnishment; to make past due support executory; for an increase in support, and, again, prayed that Mr. Weaver receive a jail sentence.
The rule came for hearing on August 18 and September 23, 2011. At the hearing, Mr. Weaver testified that he regularly paid child support from January 2008 through the present date. In addition to his employment as a police officer in the town of Springfield, Louisiana, Mr. Weaver works an off-duty detail at a bingo hall, beginning in January of 2011, for which he is sometimes paid in cash. The job pays $120 about twice per month. If paid by check, the bingo hall cashes it. In 2010, Mr. Weaver had a savings account in addition to his checking account, but he closed the savings account in April 2011. At the time of the hearing, Mr. Weaver was living with Desiree Chauvin, the owner of R & D Sales, who is also named on his checking account; however, although Mr. Weaver occasionally helped out at the company, he has no financial interest in it. During periods of unemployment, he turned to his mother for help so that he could pay the support.
|¡;Mr. Weaver testified that, for the month of February 2008, he paid support of $700 plus $100, in cash, which had been ordered by the court in the earlier consent judgment. He then testified that he paid $700 per month from March 2008 through December 2009, at her request in cash, although the payments were not made on the first and fifteenth, but, instead, when he picked up or dropped off the children. Bank statements for March 2010 were produced indicating the deposit of some payroll checks from Wal-Mart, as well as some cash withdrawals totaling $380, which Mr. Weaver testified were for support. In April, he took out $304 for purposes of support. Later, on the advice of his fiancée, Desiree Chauvin, he began paying support with a check. In March of 2010, Mrs. Weaver asked him to add $10 per week to the check because her bills had gone up. At some point, Mr. Weaver applied to join the military, and there was a sign-on bonus had he been accepted. However, he denied telling Mrs. Weaver that he was going to pay his support ar-rearages with it. Mr. Weaver’s grandmother died, but he did not expect an inheritance from her and did not receive *1119 one. He further testified that he did produce his employment information to Mrs. Weaver’s attorney as ordered, for purposes of garnishment proceedings; however, that garnishment was never effected. He also paid medical expenses presented by Mrs. Weaver, and he has paid for one daughter’s eye exam and prescription glasses. He has now enrolled his daughters on his insurance at work.
Mrs. Weaver testified that Mr. Weaver told her she would be receiving support payments from the garnishment proceedings. Mr. Weaver did not pay any support from February 2008 through January 2009. In October of 2009, Mr. Weaver became employed by the police department and started making payments soon thereafter. She then testified that he did give her cash consisting of $60 to $100 “four to five times” in June and July of 2009, when he was at Wal-Mart. In R2008, after Mr. Weaver lost his job in Pearl River, he never paid her. He promised her any inheritance he would receive from his grandmother, and also he told her she would receive the $10,000 sign-up bonus he would earn if he was accepted in the military. Mr. Weaver also told her he was the owner of R & D Sales, which he said stood for “Ryan and Desiree,” and asked her to bring business cards to her job to help him sell. Everything was in Mr. Weaver’s name until Mrs. Weaver told him she was taking him back to court. Mr. Weaver also told her he was a seller for Louisiana Cedar Shack, which makes wooden boxes, and that he received income from that. He started paying an extra $20 per month in March 2010, toward the ar-rearages he owed, but Mrs. Weaver did not ask him to do so.
Mr. Weaver has not paid his share of uncovered medical bills, except for $100. Mrs. Weaver did not present Mr. Weaver with medical payments she made. Mrs. Weaver became ineligible for Medicaid, and the children were placed on the Louisiana CHIP plan. Her daughter has a patch, not covered by insurance, for which she pays $50 per month at the office. She never sent Mr. Weaver her monthly statement, because he would not pay it.
According to Mrs. Weaver, the consent judgment was incorrect, because the ar-rearages at the time were $1,000, not $100. On cross-examination, Mrs. Weaver agreed that, in her answers to interrogatories, between February 2008 and November 2009 she received, at most, eight payments of between $60 and $100. She has received $700 per month from November 2009 through the present, although the payments are never on time. She agreed that she consented to let him pay her whenever they exchanged the children. She further agreed she did not request him to make medical payments in writing and then later stated she did send notice to Mr. Weaver of the monthly CHIP obligation, because she wanted him to cover them on his insurance at work. Mrs. Weaver did not continue to take him to 17court when he failed to pay because she could not afford an attorney each time and because he was unemployed. She admitted she had no evidence that he did not pay her.
JoEllen Weaver testified that she is Mr. Weaver’s mother. He lived with her from 2008 to 2009, and she gave him use of a bank account. He had the ATM card. She observed Mr. Weaver paying support on a few occasions when Mrs. Weaver brought the children. JoEllen Weaver did not think any payments had been missed, and Mrs. Weaver did not complain of such to her. JoEllen Weaver paid the support in the amount of $850 about three times. She agreed that, had her son been accepted into the military, he would have placed the money into an account for payment of *1120 support. She knows nothing about R & D Sales or Louisiana Cedar Shack.
Desiree Chauvin testified that she is engaged to Mr. Weaver. Mr. Weaver has nothing to do with R & D Sales except that he has helped her occasionally. There was never an account with the company, which is now defunct, with Mr. Weaver. The company was a seller for manufactured carports and buildings, but Desiree Chau-vin closed it down. Coast-To-Coast was a third party company that made the buildings sold by R & D. Although it was her business, and in her name, she gave Mr. Weaver permission to sign on her behalf because she was not able to be present at the time the arrangement was set up with Coast-To-Coast. Mr. Weaver also set up an internet site for Louisiana Cedar Shack but did not make money from that. Desiree Chauvin had previously had a good relationship with Mrs. Weaver.
After taking the matter under advisement, the trial court found a number of inconsistencies between the petition for contempt, the answers to interrogatories submitted by the parties, and the testimony, “most of [which] were acknowledged |sby Mrs. Weaver, who maintained that her in court testimony was the correct account .... ” In light of the inconsistencies, the court opined that Mrs. Weaver had failed to carry her burden of proof and . denied the rule for contempt.
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes constructive contempt of court. La. C.C.P. art. 224. The burden of proof for civil contempt is by a preponderance of the evidence and appellate review is by the manifestly erroneous standard.[1] To find a person guilty of constructive contempt, it is necessary to find that he violated the order of court intentionally, knowingly and purposefully, without justifiable excuse.[2] Proceedings for contempt must be strictly construed, and the law does not favor extending their scope.[3]
Mrs. Weaver argues on appeal that the court erred in finding her testimony inconsistent with the allegations in her Rule, and she seeks to reconcile that testimony with the pleadings. Fundamentally, however, the appeal presents issues that, overall, address themselves to the apparent credibility finding of the trial court.
Mrs. Weaver testified as to the payments she did and did not receive from Mr. Weaver. Mr. Weaver testified that he made all payments due. Mrs. Weaver argued that he could not have done so, urging his periodic un-employment, his method of making ATM withdrawals and the timing of his payments, stating in brief that his explanations “appear” or are “seemingly” false. She then argues that |9he had business arrangements and access to other funds with his fiancée. Mrs. Weaver details certain perceived inconsistencies in the testimony and answers to interrogatories.
*1121 However, the trial court found inconsistencies in Mrs. Weaver’s own testimony. The court noted that she testified she received some payments in June and July of 2009, which contradicted her allegation that she had received no payments whatsoever. We note inconsistencies within her testimony on that issue, wherein she stated she received four or five payments, and then stated it was no more than eight. Her testimony on whether and how she had notified Mr. Weaver of the children’s medical expenses was confusing. Although there were also some inconsistencies with Mr. Weaver’s testimony, after reviewing the entire record, we cannot state that, insofar as the judgment was based on a credibility finding, such finding was manifestly erroneous.
The evidence admitted at trial, which consisted of answers to interrogatories, some paycheck stubs, and a few checking account records, was inconclusive in proving that Mr. Weaver had not complied with the support order. In the end, Mrs. Weaver admitted she had no evidence of non-payment. Therefore, the trial court correctly determined that Mrs. Weaver failed to carry her burden of proof by a preponderance of the evidence.
For the foregoing reasons, the judgment denying the rule for contempt is affirmed.

AFFIRMED

. In re Jones, 10-66 (La.App. 5 Cir.11/9/10), 54 So.3d 54, 67, writ not considered sub nom. In re Interdiction of Jones, 10-2738 (La.2/4/11), 56 So.3d 979.

. In re Jones, supra (citing Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, writ denied, 98-0990 (La.5/29/98), 720 So.2d 343, cert. denied, Polaris Ins. Co., Ltd. v. Brunet, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999)). (Citations omitted.)

. Id.