2015 WY 72

**William Cossey MILLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S 14 0220.

Supreme Court of Wyoming.

May 15, 2015.

Representing Appellant: Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

KITE, Justice.

[¶ 1] William Cossey Miller claims the district court erred by revoking his probation because there was no showing that his violations of the probation conditions were willful. We conclude the record supports the district court's decision and affirm.

## ISSUE

[¶ 2] Mr. Miller states the issue on appeal as:

Did the court commit reversible error by failing to make a finding of willful violation

of probation and by abusing its discretion in basing a probation revocation on events beyond the control of a probationer?

The State presents a similar issue, although it is phrased in more detail.

### FACTS

[¶3] Mr. Miller pleaded guilty to one count of second degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6–2–315(a)(i) (LexisNexis 2013).[1] On February 14, 2014, the district court sentenced him to five to ten years of incarceration, but suspended the sentence and ordered him to serve six years on supervised probation. The terms of his probation included:

a. That said Defendant will remain law abiding, live a worthy respectable life and have no violations of any Federal, State or local laws. . . .

b. That said Defendant shall read, sign and abide by all the terms and conditions of the Wyoming Department of Corrections, Probation and Parole Agreement and cooperate with Probation Agents in all respects. . . .

h. That said Defendant is not to cancel any appointments relating to supervision without prior permission of Probation Agent. Appointments are to include, but are not limited to, office meetings, counseling appointments, doctor appointments and appointments with job services.

i. That said Defendant not move, change address or quit employment without the prior permission of Probation Agent and keep Agent advised of whereabouts at all times.

j. That said Defendant shall gain and maintain a telephone. . . .

x. That said Defendant submit to a sexual offender evaluation by an accredited sexual offender counseling provider approved by Probation Agent within sixty (60) days of his sentencing and shall complete any sub-

sequently recommended sexual offender counseling at his own expense.

y. That said Defendant submit to and participate in polygraph examinations and penile plethysmographs [PPG] at his own expense at the discretion of the supervising Probation Agent in consultation with the treatment provider.

[¶4] Mr. Miller was scheduled for a sexual offender evaluation and associated PPG in Salt Lake City, Utah on April 14, 2014. At approximately 11 p.m. the day before (April 13), he called his probation agent and told her that he could not go to the evaluation because his wife had lost his money. He rescheduled the evaluation for April 21, 2014; but, the probation agent sanctioned him with six days in jail for missing the first appointment.

[¶5] Mr. Miller was released from jail on April 20, 2014, and left early the next morning for his appointment. Although his driver's license was suspended, he borrowed a friend's vehicle and attempted to drive to the appointment. The car broke down and he missed his appointment. Neither the probation agent nor the evaluator knew where Mr. Miller was until 5:50 that evening, when he texted the agent and told her that the vehicle had broken down. He claimed his phone was "dead" because he was unable to charge it while in jail.

[¶6] The State filed a petition to revoke Mr. Miller's probation, alleging several violations of the conditions of his probation, including:

1. He failed to obtain a sexual offender evaluation within 60 days of sentencing as ordered;

2. He failed to obtain a PPG as instructed;

3. He was "a no show" for his sexual offender evaluation on April 21, 2014;

4. His whereabouts were unknown on April 21, 2014;

---

1. Section 6–2–315(a)(i) states:
   (a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6–2–314, an actor commits the crime of sexual abuse of a minor in the second degree if:

   (i) Being seventeen (17) years of age or older, the actor inflicts sexual intrusion on a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor[.]

5. He failed to register with the Sheriff's Department's Sex Offender Registry on April 20, 2014, as required by law; and

6. He was terminated from the Intensive Supervision Program [ISP] on April 21, 2014, which was a violation of his obligation to abide by terms of the probation and parole agreement.

[¶ 7] Mr. Miller denied the allegations in the petition and the matter proceeded to hearing. The district court revoked Mr. Miller's probation after concluding he had violated several conditions of his probation[2] and his excuses for the violations were not well founded. Mr. Miller appealed.

## DISCUSSION

[¶ 8] W.R.Cr.P. 39 governs probation revocation proceedings. Under the rule, [t]he proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation. After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.

*Sinning v. State*, 2007 WY 193, ¶ 9, 172 P.3d 388, 390 (Wyo.2007), quoting *Mapp v. State*, 929 P.2d 1222, 1226 (Wyo.1996). In addition to the requirements of W.R.Cr.P. 39, "we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society." *Sinning*, ¶ 10, 172 P.3d at 390 (citations omitted). The willfulness of a probationer's violation is addressed during the dispositional phase. *Id.*

[¶ 9] Mr. Miller argues the district court committed reversible error by failing to expressly rule that his probation violations were willful. While willfulness is a requirement for revoking probation and it is obviously helpful if the district court makes a finding on the willfulness element, Mr. Miller does not direct us to any authority which requires an express ruling by the district court that the violation was willful. In addition, although the district court did not use the term "willful" in its decision in this case, it clearly addressed the requirement when it rejected Mr. Miller's excuses for the violations.. After defense counsel argued that Mr. Miller's actions did not "constitute a willful and substantial violation of the terms of his probation," the district court stated that his excuses did not "ring true" and were "inconsistent with the rest of the testimony." Under these circumstances, we have no trouble rejecting Mr. Miller's argument that the district court committed reversible error by failing to make an express finding that his probation condition violations were willful.

[¶ 10] We turn now to the question of whether the record supports revocation of Mr. Miller's probation. A district court's decision to revoke probation and impose a sentence is discretionary, and we will not interfere with the ruling unless the record shows a clear abuse of discretion. *Mapp*, 929 P.2d at 1225. Although the district court's decision must be based upon verified facts and the defendant must be afforded due process, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that the defendant willfully violated a condition of his probation. *Id.; Anderson v. State*, 2002 WY 46, ¶ 25, 43 P.3d 108, 118 (Wyo.2002).

[¶ 11] The determination of whether a probationer's violation of a probation condition was willful is a question of fact. This Court upholds the district court's factual findings unless they are clearly erroneous:

---

**2.** The district court ruled that Mr. Miller did not violate the condition of his probation which required that he register as a sex offender because the deadline for registration had not yet passed when the petition to revoke his probation was filed.

Because the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence, the trial court's factual findings are not disturbed on appeal unless they are clearly erroneous, and the evidence is viewed in the light most favorable to the trial court's determination.

*Robinson v. State*, 2003 WY 32, ¶ 15, 64 P.3d 743, 747–48 (Wyo.2003). *See also Edrington v. State*, 2008 WY 70, ¶ 6, 185 P.3d 1264, 1266 (Wyo.2008).

[¶ 12]   As we stated earlier, the district court found that Mr. Miller violated the conditions of his probation by: 1) failing to obtain his sexual offender evaluation as ordered by the court; 2) failing to obtain a PPG as instructed; 3) failing to appear for his appointment for the sexual offender evaluation on April 21, 2014; 4) failing to inform his probation agent of his whereabouts on April 21, 2014; and 5) being terminated from ISP.

[¶ 13]   Mr. Miller asserted his violations were not willful because his first probation agent told him that he should "hold off" getting his sex offender evaluation and PPG while she searched for a qualified evaluator in Wyoming; he did not have the funds to have the evaluation done on April 14, 2014, because his wife had lost the money or their "card;" he could not attend the appointment on April 21, 2014, because the car he borrowed broke down; and he could not contact his probation agent at the time because he was unable to charge his phone while in jail and it was "dead."

[¶ 14]   Probation agent Kori Rossetti testified that she had been Mr. Miller's probation agent since the end of March, 2014. She stated that he violated the conditions of his probation which required him to obtain the required sexual offender evaluation (and associated PPG) within sixty days of his February 14, 2014, sentencing and to maintain contact with her. She testified at the hearing:

> April 14th he was scheduled to do an evaluation in Salt Lake City. I got permission for him to travel down there to do the evaluation. However, he failed to go. So

he was actually given a six-day jail sanction. He had rescheduled the evaluation for ... April 21st at eight o'clock. He failed to show for that. I attempted to locate him as well as Monarch Assessment where the evaluation was. Neither one of us could reach him or leave a voicemail, so his whereabouts were unknown at that time.

[¶ 15]   Mr. Miller explained that he had waited until close to the end of the sixty day period to get the evaluation because a former probation agent had told him to wait while she looked for a place in Wyoming where he could be evaluated. He then described what had happened to prevent him from being evaluated on April 14:

> Q. . . . Now, tell us what happened on April 14th. You heard testimony you just didn't show up. What happened?
>
> A.   On April 13th I tried getting ahold of Kori to let her know that I wasn't able to get money and didn't hear from her. So on the 14th I contacted her first thing—no. She called me first thing in the morning and told me that I needed it done and that I needed to meet her in her office.
>
> . . . .
>
> Q.   Okay. And what happened on the 14th of April when you met with her?
>
> A.   I showed up to her office. She pulled me into one of the rooms in Green River and asked me why I wasn't able to make it and I told her that it's because I couldn't come up with the money and my wife had lost our card so I wasn't able to go. And then she told me to get on the phone and call Monarch and reschedule. So I did and I called them and they could only reschedule for the following Monday. So she then told me that I was going to serve jail time for seven days at the time and then an officer came and took me and arrested me.
>
> Q.   So you were in custody until, what, the following Sunday?
>
> A.   Yes.

[¶ 16]   While Mr. Miller was in jail, the funds or the card were located so he apparently had sufficient money for the evaluation on Monday, April 21, 2014. His wife and brother were working that day so they could

not take him to Utah for his appointment; however, they made arrangements for him to borrow a car from a friend. He left at 4:30 a.m. on April 21, 2014, but the car broke down near Mountain View, Wyoming. Mr. Miller described what happened then:

Q. What did you do when you broke down?

A. My phone was dead. I didn't charge it the night before because I did not have my charger because I just got out of jail and I did not have any—most of my things, so my phone was dead. So I started walking back to town to try to get ahold—to find somebody, hopefully a cop or somebody would pick me up, but I never got ahold of anybody until close to Little America a trucker picked me up.

[¶ 17] Mr. Miller testified that he attempted to call Ms. Rossetti when he got back to town a little before 5:00 p.m. He stated that he could not reach her by phone and eventually texted her. Ms. Rossetti testified that she received his text message at 5:50 p.m. and, by that time, his whereabouts had been unknown for over twelve hours.

[¶ 18] With regard to the willfulness of Mr. Miller's probation violations, the district court commented:

This case to a large part centers around these evals [the sexual offender evaluation requirements] and there is all this testimony about him holding off the first evaluation because a probation agent told him to hold off. I just don't—that just is not ringing true with me to find a place locally when there—I don't see that many people out looking around for something that doesn't exist. Also, if he was told to hold off, then why did he have the one scheduled, the first one scheduled that he didn't have the money for? I mean, the testimony today is that he had two appointments. Whether he was told to hold off or not, he had two appointments and one he didn't make, ostensibly for money reasons, and the other he didn't make for transportation reasons. So again, this is another credibility issue for me and I just—this holding off testimony doesn't make—it's inconsistent with the rest of the testimony.

As far as an appropriate penalty is concerned, I don't—I just can't justify doing

anything other than revoking and ordering him to serve his sentence. Serious crime, two opportunities to get that eval, being out of touch. It just—the nature of the underlying charge. I'm ordering him to serve his sentence.

[¶ 19] Mr. Miller argues that he was unable to afford the evaluation in Salt Lake City; therefore, his failure to comply with the conditions of his probation was not willful. In general, "revoking the probation of a defendant for failure to comply with probation conditions, particularly those which may require the payment of money, when not willful, but instead resulting from factors beyond the probationer's control, would be fundamentally unfair." *Johnson v. State*, 6 P.3d 1261, 1263 (Wyo.2000), citing *Kupec v. State*, 835 P.2d 359, 361–62 (Wyo.1992). *See also Schiefer v. State*, 774 P.2d 133, 141 (Wyo. 1989) (stating "[o]ne can only be found to be in violation of a condition of probation that requires money payments if the person is in a reasonable financial position to make the payments").

[¶ 20] The record does not support Mr. Miller's claim that he could not afford the evaluation. He stated he missed the first evaluation because his wife had lost the money or the card; however, that does not mean that he did not have the financial ability to comply with the requirement. Instead, it appears that he did not plan far enough in advance or make appropriate and timely arrangements to have the money available. The fact that he waited until 11 p.m. the night before the appointment to inform his probation agent of his financial problem further confirms his lack of adequate planning and coordination of his efforts to have the evaluation done within the court's deadline.

[¶ 21] Moreover, if Mr. Miller truly could not afford the evaluation, he was obligated to address the issue with the district court rather than just ignoring the probation condition. We rejected a similar argument in *Johnson*, 6 P.3d at 1263:

Johnson unilaterally determined that he could be the arbiter of which of the terms of his probation required his obedience and which of those terms might be excused by his financial condition. Johnson did not appeal the conditions of probation imposed

at the time of his sentencing. Moreover, he made no effort to address his concerns to the district court and, based upon those concerns, to seek modification of the terms of his probation or relief from the directives addressed to him by Probation and Parole. Under the circumstances of this case and in the absence of any such efforts by Johnson, there can be no abuse of discretion in the revocation of his probation.

[¶ 22] Mr. Miller also blamed his failure to have the evaluation done in a timely manner on his first probation agent who he said told him to wait while she looked for an evaluator in Wyoming. The district court did not believe his explanation for why he waited until the end of the sixty day period to schedule the evaluation, specifically finding his account was not credible. We accept the district court's findings of witness credibility unless they are clearly erroneous. Given the evidence in the record does not support Mr. Miller's explanation, the district court's finding was not clearly erroneous.

[¶ 23] In addition, the record demonstrates that Mr. Miller did not make appropriate arrangements for traveling to the evaluation on April 21. He testified that he planned to drive a borrowed car to the appointment. This plan was obviously flawed given he did not have a valid driver's license. By driving on a suspended license, he was effectively violating the condition of his probation which required him to comply with all laws. The totality of these circumstances demonstrates that his failures to obtain the sexual offender evaluation and PPG in a timely and appropriate manner were willful.

[¶ 24] Mr. Miller also violated the conditions of his probation by failing to contact his probation agent for over twelve hours after he left for the evaluation. During that time, the agent and Monarch Assessment were attempting to reach him. He claimed his phone was "dead" because he had not been able to charge it while in jail. Yet, the record shows that he was released from jail on April 20, 2014, the day before his appointment. He stated that he did not have his charger, but did not describe any efforts he made to get his phone charged. His probation conditions required that he keep the agent informed of his whereabouts at all times and that he maintain a working phone. He provided no credible explanation for why he was not able to make arrangements to charge his phone either while he was in jail or after he was released. The district court did not abuse its discretion by revoking Mr. Miller's probation.

[¶ 25] Affirmed.