KAUTZ, Justice, dissenting.
[¶108] I respectfully dissent.
Aggregate (Consecutive) Sentences for Multiple Crimes
[¶109] As I observed in Sam v. State , 2017 WY 98, ¶ 88, 401 P.3d 834, 862 (Wyo. 2017), reh'g denied, and Sen v. State , 2017 WY 30, ¶¶ 36-37, 390 P.3d 769, 779 (Wyo. 2017) ( Sen III ), the United States Supreme Court has not prohibited consecutive sentences for juveniles who commit multiple crimes including murder. The U.S. Supreme Court never found such sentences to be "the functional equivalent of life without parole." I continue to disagree with the concept of "de facto life without parole" arising from consecutive sentences for separate crimes. In my opinion, the U.S. Supreme Court established a process to assure that a juvenile offender's age, immaturity and potential for improvement are considered in sentencing. Unfortunately, some courts, including this one, have focused on the result of the sentencing, rather than on the process.
[¶110] I recognize some states have concluded that Miller, Graham and Montgomery point to a conclusion that lengthy consecutive sentences for juveniles, when aggregated, are the same as a single sentence of life without parole. Other states have not done so. I find the better logic supports those states who have not expanded the holdings in Miller, Graham and Montgomery. Within the past year, Missouri, Colorado and Pennsylvania have all determined that Miller and Montgomery do not apply to the aggregation of consecutive term of years sentences for multiple crimes committed by a defendant under the age of 18.
[¶111] The Missouri Supreme Court stated:
the Supreme Court has not held that multiple fixed-term sentences totaling beyond a juvenile offender's life expectancy are the functional equivalent of life without parole. Warning of "frequent and disruptive reassessments of [the Supreme Court's] Eighth Amendment precedents," the Supreme Court has not looked positively upon lower courts issuing various rulings without precedence from the Supreme Court. Roper , 543 U.S. at 594, 125 S.Ct. 1183 (O'Connor, J., dissenting). "[C]lear, predictable, and uniform constitutional standards are especially desirable" in the area of the Eighth Amendment. Id. Extending the Supreme Court's holdings beyond the four corners of its opinions is clearly disfavored.
Willbanks v. Dep't of Corrections , 522 S.W.3d 238, 246 (Mo. 2017), cert. denied sub nom. Willbanks v. Missouri Dep't of Corrections , --- U.S. ----, 138 S.Ct. 304, 199 L.Ed.2d 125 (2017).
[¶112] Missouri concluded, "[m]ultiple sentences imposed for multiple offenses do not *697 become a sentence of life without parole, even though they may result in a lengthy term of incarceration. Life without parole is a specific sentence, imposed as punishment for a single crime, which remains distinct from aggregate term-of-years sentences resulting from multiple convictions." Id . at 244-45, citing State v. Brown , 118 So.3d 332, 342 (La. 2013) ; State v. Ali , 246 Minn. ----, 895 N.W.2d 237(2017) ); State v. Springer , 856 N.W.2d 460, 470 (S.D. 2014), cert. denied , --- U.S. ----, 135 S.Ct. 1908, 191 L.Ed.2d 775 (2015) ; Angel v. Commonwealth , 281 Va. 248, 704 S.E.2d 386, 402 (2011).
[¶113] Colorado was explicit in its rejection of the idea that U.S. Supreme Court precedent prohibits the "functional equivalent" of life without parole for individuals who commit multiple crimes before age 18. It said
we hold that neither Graham nor Miller applies to an aggregate term-of-years sentence, which is the sentence Lucero challenges. In Graham , the U.S. Supreme Court held unconstitutional a life without parole sentence imposed on a juvenile for a single nonhomicide offense. 560 U.S. at 57, 82, 130 S.Ct. 2011. In Miller , the Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes" violates the Eighth Amendment. 132 S.Ct. at 2460. Life without parole is a specific sentence, distinct from sentences to terms of years. Lucero was not sentenced to life without parole. Rather, he received multiple term-of-years sentences for multiple convictions. Therefore, Graham and Miller are inapplicable to, and thus do not invalidate, Lucero's aggregate sentence.
Lucero v. People , 394 P.3d 1128, 1130, cert. denied sub nom. Lucero v. Colorado , --- U.S. ----, 138 S.Ct. 641, 199 L.Ed.2d 544 (2018).
[¶114] The majority opinion relies heavily on Pennsylvania case law, particularly Batts , in concluding that there is a strong presumption against the type of sentence Mr. Davis appeals. However, just last month, well after the Batts decision, the Pennsylvania Superior Court determined that any prohibition of "de facto" life without parole sentences for juveniles applies only to individual sentences, and not to the total of consecutive sentences. In determining whether two consecutive sentences of 30 years to life were unconstitutional, the Pennsylvania court said, "we hold that we must consider the individual sentences, not the aggregate, to determine if the trial court imposed a term-of-years sentence which constitutes a de facto LWOP sentence." Commonwealth v. Foust , 2018 PA Super 39, 180 A.3d 416 (Pa. Super. Ct. 2018). It then determined that the separate, consecutive 30 years to life sentences did not violate requirements of the U.S. Constitution. That should be the result in this case. In Foust, the Pennsylvania Superior Court declined to give juvenile criminals a "volume discount" for committing multiple crimes before age 18. The majority opinion results in exactly such a volume discount. It permits juveniles to commit multiple crimes without facing appropriate responsibility for those crimes.
[¶115] I also must register disagreement with the majority's footnote directed to our legislature (footnote 4). This footnote suggests that there is a "discord" in Wyoming law, and that the legislature should address consecutive sentences for multiple crimes committed by juveniles in the same way the majority has. Implicit in this "encouragement" to the legislature is the idea that the U.S. Supreme Court requires the position the majority takes. The U.S. Supreme Court has not adopted the position taken by the majority. The states who have considered the matter have reached a variety of possible conclusions. Fourteen states have joined with the Wyoming Attorney General in requesting certiorari from the U.S. Supreme Court to obtain direction from that body.
[¶116] It is premature to suggest that the approach to "de facto life" taken by this Court is the definitive and appropriate application of the 8th Amendment. Any "incongruity" or "discord" in the state of Wyoming law on this matter is the result of this Court going beyond what the U.S. Supreme Court has decided up to this point.
Burden of Proof at Individualized Sentencing Hearing
[¶117] In my judgment, the majority opinion makes it impossible for a trial judge to *698 ever find that a juvenile who has committed multiple, heinous crimes should serve a sentence longer than what this court believes is the "functional equivalent" of life without parole. The majority opinion acknowledges this, stating "the task of determining whether a juvenile is permanently incorrigible is difficult, if not impossible." By establishing a presumption against such consecutive sentences, and providing that the presumption can only be overcome by proof beyond a reasonable doubt that the defendant can never be rehabilitated, the majority has precluded any finding that the juvenile should serve such a sentence. The factors to sentencing, including potential youthfulness and immaturity, or the potential for gaining sufficient maturity to have self-control, are not the types of facts that can be determined "beyond a reasonable doubt." Sentencing judges have been given significant latitude because the sentencing factors are not typically capable of such determination. By establishing an impossible burden of proof on the rehabilitation factor, the majority has, in effect, removed discretion from sentencing judges. The majority opinion goes far beyond any ruling of the U.S. Supreme Court, and effectively permits juveniles to escape significant consecutive consequences for significant, separate crimes. It has created policy that should only be established by the legislature.
Standard of Review/Abuse of Discretion
[¶118] I dissent from the majority's creation of a new standard of review for juvenile sentences. It calls the standard a review for abuse of discretion, "but will not be lenient." This is not an abuse of discretion review at all, but is a de novo standard of review where the majority substitutes its judgment for that of the trial court. For example, the majority substitutes its judgment for the trial court here by finding that Mr. Davis was not "an essentially emancipated minor functioning as an adult." Rather than reviewing the evidence which supports that finding by the trial court, the majority discounts that evidence to reach its own conclusion.
[¶119] The majority justifies its unique standard of review by analogizing Mr. Davis' consecutive sentence to capital punishment. Mr. Davis has received neither a death sentence nor a sentence of life without parole. The only person subject to a death sentence in this case was Mr. Davis' victim.
[¶120] Few principles have been more firmly established in Wyoming law than the standard that sentencing is left to the discretion of the trial judge absent a clear abuse of discretion. I do not believe this principle should be discarded. This Court has commented on this standard many, many times. "We have an abiding reluctance to review a trial judge's determination of sentence. The determination is a burdensome decision which no trial judge could lightly make and which we will not lightly overturn." Martin v. State , 720 P.2d 894, 896 (Wyo. 1986). "Sentencing judges are given broad discretion to consider a wide range of factors about the defendant when imposing sentences." Mendoza v. State , 2016 WY 31, ¶ 24, 368 P.3d 886, 894 (Wyo. 2016), quoting Deeds v. State, 2014 WY 124, ¶ 22, 335 P.3d 473, 479 (Wyo. 2014).
[¶121] This Court upholds the district court's factual findings unless they are clearly erroneous:
Because the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence, the trial court's factual findings are not disturbed on appeal unless they are clearly erroneous, and the evidence is viewed in the light most favorable to the trial court's determination.
Miller v. State , 2015 WY 72, ¶ 11, 350 P.3d 742, 746 (Wyo. 2015), quoting Robinson v. State, 2003 WY 32, ¶ 15, 64 P.3d 743, 747-48 (Wyo. 2003).
Our objective on review is not to weigh the propriety of the sentence if it falls within the sentencing range; we simply consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion. Because of the broad discretion given to the district court in sentencing, and our significant deference on appeal, this Court has demonstrated many times in recent years that it is a very difficult bar for an appellant to *699 leap seeking to overturn a sentencing decision on an abuse of discretion argument.
Alford v. State , 2017 WY 105, ¶ 8, 401 P.3d 902, 903-04 (Wyo. 2017), quoting Hart v. State , 2016 WY 28, ¶ 7, 368 P.3d 877, 878 (Wyo. 2016). "Sentencing judges are given broad discretion to consider a wide range of factors about the defendant when imposing sentences." Butler v. State , 2015 WY 119, ¶ 14, 358 P.3d 1259, 1264 (Wyo. 2015).
Trial courts have a broad discretion to determine the appropriate length and conditions of imprisonment in a variety of situations. We recognize that within the statutory limits, trial courts may give consideration to a wide range of factors relevant to their sentencing decisions, and that few of those factors are capable of precise quantification when translated into the final imposition of the term for incarceration. This court refrains from disturbing sentencing decisions absent a clear abuse of discretion.
Halbleib v. State , 7 P.3d 45, 47 (Wyo. 2000).
[¶122] Using these appropriate standards, I conclude that the district judge's findings were not clearly erroneous, and that his conclusion was not an abuse of discretion. After a re-sentencing hearing, the district judge found that Mr. Davis' history, both before and after the crimes in question, and the nature of the crimes themselves, supported the original consecutive sentences. The district judge had the following evidence to support his decision:
Facts About the Crime and Defendant
• Mr. Davis was born on September 23, 1964. When he committed the crimes in this case on September 6, 1982, he was 17 days from his 18th birthday. Prior to the offense, Mr. Davis had been living on his own and working during July and August 1982. His family was in Michigan.
• As a juvenile, Mr. Davis had two charges of burglary, and one charge of aggravated assault with a dangerous weapon (reduced to aggravated assault). He had been placed in juvenile treatment facilities twice, and had been hospitalized for detoxification at least three times. He switched his name from Donald Johnson (his genuine name and the name on his Arizona juvenile records) to Donald Davis because he believed there was an arrest warrant under the name Donald Johnson.
• On September 6, 1982, Mr. Davis and an accomplice picked up a hitchhiker. They drove into the countryside, stopped the car, and Mr. Davis removed the victim from the car and threw him to the ground. Mr. Davis handcuffed the victim with his hands behind his back and removed money from his pockets. While the victim was still handcuffed, Mr. Davis inflicted a large, gaping cut across the victim's throat with a Buck knife.
Facts About Mr. Davis in Prison
• Mr. Davis pled guilty to first degree murder and aggravated robbery. The district court sentenced him to life for first degree murder, and 20 to 50 years for aggravated robbery, to be served consecutively. Mr. Davis has been in prison since being sentenced in February 1983.
• In 1996, at age 32, Mr. Davis threatened corrections officers, advising them that "I'm in here on a life sentence so one more won't make no difference."
• In February 1999, at age 34, Mr. Davis refused to comply with a urinalysis test requirement.
• In May 1999, Mr. Davis tested positive for use of a controlled substance while in prison.
• In November 1999, at age 35, Mr. Davis again refused urinalysis.
• In August 2001, Mr. Davis threatened corrections officers that there was going to be a blood bath in his penitentiary pod because of administrative changes, and officers would be the first to go. He said the inmates had nothing to lose.
• In November 2001, at age 37, Mr. Davis threatened officers, stating "I wish you [expletives] would quit [expletive] with me and purposely pushing my [expletive] buttons. I have one [expletive] button left, come on, push this [expletive] button."
• In July 2002, Mr. Davis threatened a corrections officer and a nurse, stating *700 that, "This won't work [the room temperature]. If something doesn't change I will kill someone.
• In November 2002, Mr. Davis, angry over consequences for smoking, threatened to throw a corrections officer down the stairs.
• In 2006, at age 42, Mr. Davis threatened corrections officers, described how he was going to start a fire in the chow hall, claimed to be a serial killer, claimed that he "got such a rush" from killing, and that he planned to kill Captain Tipton.
• In 2012, at age 47, Mr. Davis threatened corrections officers, claiming he would kill them. He stated, "I've been down [a long] time, I'm not the (expletive) to hit a [Corrections Officer] once and stop."
• In 2002, 2004, 2008, 2009 and 2011 Mr. Davis received various prison disciplines for smoking, failing to report to work and refusing to work.
• In 2013, Mr. Davis moved for "correction" of his sentences, seeking lesser sentences based on Miller and Bear Cloud .
[¶123] The district judge's decision considered the factors required by Miller and Bear Cloud . It was supported by facts in the record. The facts support the district judge's conclusions that these crimes were not the result of youthful "underdeveloped sense of responsibility." They were not the result of juvenile propensity to engage in reckless behavior, nor the result of negative influences or peer pressure. These crimes were not the result of transient youthful immaturity. The district judge could properly reach these conclusions both from the nature of the crimes and from Mr. Davis' threats made 30 years later. Mr. Davis' character remained constant until he pursued release based on this Court's misapplication of Miller . The facts show that these crimes were a calculated, depraved aggravated robbery and a cold, calculated execution. Under any reasonable standard of review, the district judge's decision was not an abuse of discretion. I would affirm the district court's ruling.