# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 158

**OCTOBER TERM, A.D. 2020**

**December 31, 2020**

BARRY JOSEF STROBLE,

Appellant
(Defendant),

v.

S-20-0128

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*

> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    The district court revoked Barry Stroble's probation.  Mr. Stroble appeals and asserts the State presented insufficient evidence to prove he violated the terms of his probation, and the district court abused its discretion by ordering the revocation.[1]  We affirm.

## *ISSUE*

[¶2]    Did the district court abuse its discretion when it found Mr. Stroble committed the crime of attempted burglary by a preponderance of the evidence?

## *FACTS*

[¶3]    In August 2016, Mr. Stroble pleaded guilty to a string of burglaries that occurred in Wright, Wyoming.  The district court sentenced Mr. Stroble to four to six years in prison, suspended in favor of six years probation, and ordered him to pay a fine and restitution.  Among the probation conditions the district court imposed was that he not violate any laws.

[¶4]    On February 13, 2019, around 12:30 a.m., Bruce Zavatsky looked out the window of his residence and saw a light-colored passenger sedan parked in front of the storage units behind his home.  Two individuals exited the car and started tampering with the door to one unit.  Mr. Zavatsky saw the passenger clearly, but the driver had his back towards Mr. Zavatsky's windows.  He observed that one wore a knit cap and the other wore a baseball cap.  The passenger was stockier than the driver, wore a light-colored jacket, and had dark hair and facial hair, while the driver appeared to have long hair and a beard.  Mr. Zavatsky saw the driver making motions as though he was pulling on the handle or the lock, and then a motion as though he was hitting the lock or handle with an object that was close to his body.  Mr. Zavatsky heard a dull thump each time he saw the driver make the hitting motion.  After about five minutes, the two men left the storage unit, attempted to cover their footsteps, and drove away.  Mr. Zavatsky called law enforcement.

---

[1] Our review of the record revealed that, in a subsequent probation violation, Mr. Stroble pled guilty to a misdemeanor and began serving his underlying sentence, during the pendency of this appeal.  While neither party raised mootness, the doctrine applies in both civil and criminal contexts, and we can raise it sua sponte. *Sanchez v. State*, 982 P.2d 149, 150 (Wyo. 1999); *see also Beppler v. Uinta Cnty. Sch. Dist. No. One*, 2020 WY 149, ¶ 6, 477 P.3d 525, 527 (Wyo. 2020).  However, we are convinced this case is not moot because "once having had his probation revoked, he [is] burdened with that as a part of his criminal record, and it might well affect the future possibility of probation should he run afoul of the law again." *Sharp v. State*, 2008 WY 142, ¶ 12, 196 P.3d 802, 805 (Wyo. 2008).

1

[¶5]    When Deputy Cox responded to Mr. Zavatsky's call at 12:47 a.m., Mr. Zavatsky reported what he had witnessed.  A light-colored sedan with two male occupants drove by while they were talking.  Deputy Cox stopped the vehicle and found Mr. Stroble driving and his friend, Tanner Flowers, in the passenger seat.  Mr. Stroble was wearing a knit stocking hat and Mr. Flowers was wearing a baseball cap and a red flannel shirt.  Deputy Cox noted that neither Mr. Stroble nor Mr. Flowers had facial hair, but they both had long hair and he thought the wind could cause it to look like facial hair.  He received permission to search the car and discovered extra clothing, a bag of tools, and a rubber mallet with fresh markings.  Deputy Cox let Mr. Stroble and Mr. Flowers leave and, as he continued his investigation at the storage unit, he identified footprints leading to the door and fresh markings near the handle that appeared to be black rubber.  When Deputy Cox went off duty, he passed the investigation to the next officer.

[¶6]    Deputy Lind took up the investigation at the start of his shift.  Deputy Lind drove to the storage units and observed a black transfer material on the door of the unit.  He also measured the tire tracks, and found the wheelbase was approximately 70 to 70.5 inches.  He then drove to Mr. Stroble's home, measured the wheelbase of his car, and found it was the same size.  Deputy Lind contacted Mr. Stroble and Mr. Flowers and interviewed them at the Wright Public Safety Office.  Mr. Stroble gave Deputy Lind the mallet, and Deputy Lind later took the mallet to the storage unit and compared the transfer marks, which matched.

[¶7]    The State moved to revoke Mr. Stroble's probation asserting he violated the terms by committing the crime of attempted burglary.  Mr. Stroble contested the revocation.  At the hearing, Mr. Stroble testified that he did not attempt to break into the storage unit.  He contended he could not have been the person who attempted to break into the unit because he was not in Wright at the time.  He produced a McDonald's receipt that showed he purchased two burgers, two sandwiches, and two drinks at 12:01 a.m., in Gillette, Wyoming, on February 13, 2019.  He testified that he and Mr. Flowers ate their food in the McDonald's parking lot, which took a couple of minutes, before driving back to Wright.  Once in Wright, they drove by their friend's house, near the storage unit, to see if he wanted to hang out, but they left without seeing him because his bedroom window was dark.  At that point, Deputy Cox stopped their vehicle.  Mr. Stroble testified that he told both Deputy Cox and Deputy Lind that he had used the mallet earlier in the day to try to break free a frozen skateboard rail.  The district court found that the State proved by a preponderance of the evidence that Mr. Stroble committed the crime of attempted burglary, revoked Mr. Stroble's probation, and reinstated his probation.  Mr. Stroble appealed.

### STANDARD OF REVIEW

[¶8]    The district court's decision to revoke probation is discretionary, and we will not disturb it "unless the record demonstrates a clear abuse of discretion."  *Sena v. State*,

2

2019 WY 111, ¶ 25, 451 P.3d 1143, 1149 (Wyo. 2019) (quoting *Brumme v. State*, 2018 WY 115, ¶ 11, 428 P.3d 436, 441 (Wyo. 2018)).

> Although the district court's decision must be based upon verified facts and the defendant must be afforded due process, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that the defendant willfully violated a condition of his probation.

*Miller v. State*, 2015 WY 72, ¶ 10, 350 P.3d 742, 745 (Wyo. 2015) (citations omitted). "We view the evidence in the light most favorable to the district court's determination and uphold its factual findings unless they are clearly erroneous '[b]ecause the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence." *Brumme*, 2018 WY 115, ¶ 11, 428 P.3d at 441 (alteration in original) (emphasis omitted) (quoting *Miller*, 2015 WY 72, ¶ 11, 350 P.3d at 746).

## DISCUSSION

[¶9]    Probation revocation is a two-part process: the adjudicatory phase where the district court ascertains if the probationer violated the terms or conditions of his probation, and the dispositional phase where the district court determines the appropriate consequence of the violation. *Sena*, 2019 WY 111, ¶ 26, 451 P.3d at 1149. The State is required to prove the violation by a preponderance of the evidence. *Bazzle v. State*, 2019 WY 18, ¶ 26, 434 P.3d 1090, 1097 (Wyo. 2019); W.R.Cr.P. 39(a)(5). Mr. Stroble asserts the district court abused its discretion, during the adjudicatory phase, because the State presented insufficient evidence to prove he committed the crime of attempted burglary.

[¶10]  When viewed in the light most favorable to the district court's determination, the record contains sufficient evidence to support the district court's finding that Mr. Stroble violated his probation by committing the crime of attempted burglary. Mr. Zavatsky testified that two men attempted to open storage unit seven. Mr. Zavatsky further testified that each man wore a hat, one a knit stocking cap and the other a baseball cap, and they drove a light-colored passenger sedan. When Deputy Cox stopped Mr. Stroble's Ford Taurus, a light-colored passenger sedan, he was wearing a knit stocking cap and his passenger had on a baseball cap. Finally, Mr. Zavatsky testified that he heard a dull thump after every swing the driver took at the storage unit handle. He could not specifically identify the noise, but knew it was not metal on metal. Deputy Cox discovered a rubber mallet in Mr. Stroble's vehicle with fresh transfer marks on its face, and Deputy Lind testified that the marks on the face of the mallet matched the marks on the door. The State introduced photos that documented the marks matched. Additionally, Deputy Lind measured the tire tracks at the scene, and the wheelbase of

3

Mr. Stroble's car, and discovered they were the same. Finally, while the McDonald's receipt showed that Mr. Stroble purchased his meal at 12:01 a.m., Deputy Lind testified that, if someone followed the speed limit, it would take thirty-five to forty minutes to drive from Gillette to Wright. Mr. Zavatsky testified that he heard someone at the storage unit around 12:30 or 12:40 a.m. Based on this testimony, it is reasonable to infer that Mr. Stroble could have made it from Gillette to Wright in the necessary timeframe.

[¶11] Mr. Stroble asserts the State only presented circumstantial evidence, and it was insufficient to overcome his alibi evidence. However, the law does not distinguish between direct and circumstantial evidence and "[t]he State may meet its burden through reasonable inferences drawn from indirect or circumstantial evidence." *Brumme*, 2018 WY 115, ¶ 21, 428 P.3d at 443 (citations omitted). While Mr. Stroble presented evidence that might have supported a different conclusion, it is not for this Court to reweigh the evidence unless the district court's findings are clearly erroneous. *Id.* at ¶ 23, 428 P.3d at 444. Here, the district court reasonably inferred from the evidence presented and the testimony of Mr. Zavatsky and Deputies Cox and Lind that Mr. Stroble was one of the men who attempted to break into the storage unit. It made a conscientious judgment after hearing all the facts, as evidenced by its research into both the burden of proof and the use of circumstantial evidence in probation revocation proceedings. Further, the district court weighed the credibility of the witnesses and compared their testimony to the evidence presented. The evidence supported the district court's inferences. The district court's factual findings were not clearly erroneous.

## *CONCLUSION*

[¶12] The district court did not abuse its discretion when it determined the State proved Mr. Stroble violated his probation by a preponderance of the evidence. Affirmed.

4