# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 79

APRIL TERM, A.D. 2022

June 23, 2022

IN THE MATTER OF THE ESTATE OF
CHARLES GEORGE SOAMES, deceased:

CYNTHIA E. SOAMES, Personal
Representative,

Appellant
(Petitioner),

v.                                                              S-21-0257

DICK GIFFORD, former Personal
Representative,

Appellee
(Respondent).

*Appeal from the District Court of Big Horn County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
    Larry B. Jones of Burg Simpson Eldredge Hersh & Jardine, P.C., Cody, Wyoming.

*Representing Appellee:*
    Thomas P. Keegan of Keegan & Krisjansons, P.C., Cody, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Cynthia E. Soames, personal representative of her brother's estate, filed a motion for an order to show cause against the estate's previous personal representative, Dick Gifford. Ms. Soames' motion alleged that certain items went missing from the estate while Mr. Gifford was personal representative and requested that he be made to account for those items. The probate court held a show cause hearing and subsequently denied the motion, thereby declining to hold Mr. Gifford in contempt. In its order, the court found Mr. Gifford's testimony credible and concluded that Ms. Soames had failed to meet her burden of proving that Mr. Gifford took, and failed to return, the items. Ms. Soames appeals the court's credibility ruling. We affirm.

*ISSUE*

[¶2]    Ms. Soames raises one issue, which we rephrase:

> Did the probate court err when it found Mr. Gifford's testimony credible?

*FACTS*

[¶3]    Mr. Gifford, a Wyoming realtor, had been acquainted with Charles George Soames (Charles) both personally and professionally since Charles first moved to Wyoming in the 1970s. In May 2019, Mr. Gifford received a phone call from a nurse at a Denver hospital informing him that Charles was non-responsive and on life support. Mr. Gifford, unaware whether Charles had any family and believing he was the only person the hospital could find that knew him, told the nurse he did not object to the hospital's proposed course of treatment—discontinuing life support. Charles died on May 19, 2019.

[¶4]    Mr. Gifford knew where Charles kept his spare key and began tending to his house after his death. Mr. Gifford testified that he cleaned, hauled out garbage, and regularly checked on the house.[1] Because he did not find a will or any indication that Charles had any living family, he also provided information for Charles' death certificate, collected his mail, paid a few of his bills, looked for his safety deposit box key, and consulted with Charles' banker, Stan Lundberg, on financial matters. In the time he was caring for the house, he testified that he borrowed a floor jack from the garage to fix a tire on his vehicle, he took two guns for safe-keeping after he suspected there had been a break in, and he took two other guns to have them appraised.

---

[1] Charles' neighbor, Kevin Spann, testified he saw Mr. Gifford tending to Charles' house on three different occasions and once noticed Mr. Gifford hauling white garbage bags out of the house.

1

[¶5]     Mr. Gifford consulted his attorney, Randy Royal, who recommended he file a petition for letters of administration.  Mr. Gifford's petition stated that Charles had "no known next of kin" and that "due search and inquiry" had been made to locate a will but none had been found.  The court issued Mr. Gifford letters of administration and appointed him personal representative of the estate in August.

[¶6]     Upon becoming the personal representative, Mr. Gifford had Charles' safety deposit box drilled open.  Among other things, the box contained Charles' will, which identified his twin sister, Ms. Soames, as his sole heir.  Mr. Gifford obtained Ms. Soames' phone number through information and called to tell her that her brother had died in May and left her his entire estate.  Ms. Soames, who lived in Indiana, was shocked by the news, and arranged travel to Wyoming with her cousin, Luther Boggan, to handle the estate.

[¶7]     When Ms. Soames and Mr. Boggan arrived in Wyoming later that summer, Mr. Gifford met them at the airport and drove them to Charles' house.  Ms. Soames and Mr. Gifford's relationship was tense from the start.  Ms. Soames believed that Mr. Gifford was reluctant to turn over the estate to her, and Mr. Gifford felt that Ms. Soames was accusatory and blamed him for not getting in touch with her sooner.  While Ms. Soames and Mr. Boggan were in Wyoming, Mr. Gifford returned the floor jack and the guns, and gave her the items from the safety deposit box and a box of Charles' belongings from the hospital, which included clothes and his wallet.[2]

[¶8]     While going through Charles' estate, Ms. Soames used his computer to access "a detailed list of everything he had in [his] house."  She testified that she knew this list existed because Charles had previously given her a copy and told her "this is everything I own, if anything happens, this is what I have."  Ms. Soames began comparing the list against the items she found in Charles' home.  In September, she met with Sheriff Kenneth Blackburn and Deputy Shane Brost because she felt that items were missing, she was uncomfortable with Mr. Gifford, and she did not understand why he was ever involved in the first place.[3] After showing the officers Charles' list and telling them she believed that Mr. Gifford had taken items from the house, she served Mr. Gifford with a criminal trespass notice prohibiting him from entering Charles' property.

[¶9]     Ms. Soames replaced Mr. Gifford as the personal representative in December 2019. In July 2020, she filed an inventory and appraisal of estate assets.  With that filing, she included a list she had compiled of items she asserted were missing from the estate, claiming she "was very familiar with personal property [Charles] had in his possession at his home on or before the date he passed away."  The list was four pages long and included

---

[2] Ms. Soames' and Mr. Gifford's testimony conflicted regarding the number of times Mr. Gifford returned items to Ms. Soames, what items he returned, and what caused him to return the items.

[3] Ms. Soames questioned why the officers did not locate her when Charles died.  Though Sheriff Blackburn told her that they had tried to find Charles' next of kin, he said she was still "very upset" because she felt like they "did not do [their] job."  He claimed they "agreed to disagree."

numerous items, such as specific pieces of jewelry and clothing, coins, food, kitchen items, outdoor gear, tools, and office supplies.

[¶10]   Ms. Soames filed her motion for an order to show cause in November 2020 and attached the same list of missing items.  Her motion alleged that Mr. Gifford was the only person with access to the house, he was seen removing things from the house, he admitted that he removed certain items from the house, and he returned some of the items.  She then requested that he be ordered to "show cause as to why all property located on or about the decedent's residential real property is missing or to provide evidence as to its whereabouts[.]"  Mr. Gifford responded and generally denied the allegations.  Later that month, the court issued an order to show cause and set a hearing on the matter.

[¶11]   The hearing took place in March 2021.  Sheriff Blackburn, Deputy Brost, Mr. Spann, Mr. Gifford, Mr. Royal, Ms. Soames, Mr. Boggan, and Mr. Lundberg all testified.  At the close of evidence, Ms. Soames argued that the case was "pretty straightforward" and that Mr. Gifford was not credible because his testimony was odd, inconsistent, and sometimes did not make sense.  Conversely, Mr. Gifford argued that he was the one who found the will, he immediately contacted Ms. Soames, he was happy to turn over the responsibility, and he retained none of the estate property.  He maintained that he should not be held in contempt because the case was "complete nonsense" and based on pure "speculation and conjecture."

[¶12]   Following the hearing, the court denied Ms. Soames' motion and "decline[d] to find Mr. Gifford in contempt."  Ms. Soames appealed.

## *DISCUSSION*

[¶13]   To establish contempt, Ms. Soames had to show that: 1) there was an effective court order requiring certain conduct by Mr. Gifford; 2) Mr. Gifford had knowledge of the order; and 3) Mr. Gifford willfully disobeyed the order.  *See Breen v. Black*, 2020 WY 94, ¶ 11, 467 P.3d 1023, 1027 (Wyo. 2020) (citing *Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶¶ 10– 11, 397 P.3d 189, 193 (Wyo. 2017)).  Ms. Soames had the burden of proving these elements by clear and convincing evidence.  *Id.* ¶ 12, 467 P.3d at 1027 (citing *McAdam v. McAdam*, 2014 WY 123, ¶ 14, 335 P.3d 466, 470 (Wyo. 2014)).

[¶14]   Following the show cause hearing, the probate court concluded that the first two elements were satisfied because Mr. Gifford was required by court order to properly fulfill the duties of a personal representative in compliance with the probate code.  It further concluded, however, that Ms. Soames had failed her burden to prove that Mr. Gifford disobeyed that court order by taking and failing to return estate property.  It found that Ms. Soames had failed to prove that the items she listed as missing were still owned by Charles at the time of his death—it was unclear when Charles had created his list, and Ms. Soames had not seen him in almost twenty-five years and had never been to his home.  The court

3

reasoned that Charles "could have sold or given away, or lost some or all of the items." And, it noted that Mr. Gifford testified he never saw "most of the items listed as missing" and "[h]e returned the items he testified he took for safekeeping." Though it observed that "Mr. Gifford's testimony was contradictory and confusing at times[,]" it also found that he was credible.

[¶15] Ms. Soames now argues the probate court erred when it found Mr. Gifford's testimony credible. She makes several different arguments to this point, claiming Mr. Gifford's "testimony was rife with falsehoods and inconsistencies" and "simply not believable."[4] Additionally, she claims that had the court not made this "erroneous" credibility finding, it would have properly concluded that the lists she entered into evidence were reliable and sufficient to prove that the missing items were in Charles' estate when he died and therefore must have been removed from the house by Mr. Gifford, in violation of his personal representative duties.

[¶16] Because the lower court is in the best position to assess witness credibility and weigh testimony, we give considerable deference to its factual determinations. *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 15, 501 P.3d 1274, 1279–80 (Wyo. 2022) (citation omitted); *Lackey v. Lackey*, 2022 WY 22, ¶ 28, 503 P.3d 92, 98 (Wyo. 2022) (citation omitted); *see also* 36 C.J.S. *Federal Courts* § 615, Westlaw (May 2022 Update) ("[O]nly the trial judge can be aware of variations in demeanor and tone of voice that bear so heavily on a listener's understanding of, and belief in, what is said." (footnote omitted)). Where a court makes an explicit finding of credibility on the record that is challenged on appeal, we will review that finding for clear error. *See Miller v. State*, 2015 WY 72, ¶ 22, 350 P.3d 742, 748 (Wyo. 2015) ("We accept the district court's findings of witness credibility unless they are clearly erroneous."); *Redland v. Redland*, 2012 WY 148, ¶ 180, 288 P.3d 1173, 1214 (Wyo. 2012); *see also Heimer v. Heimer*, 2021 WY 97, ¶ 26, 494 P.3d 472, 480 (Wyo. 2021) (reviewing factual findings for clear error). Clear error occurs when, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020) (citing *Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 18, 444 P.3d 1268, 1275 (Wyo. 2019)).

[¶17] Having reviewed the entire record, we are left with no such conviction. Though the record reveals that Mr. Gifford's testimony at the hearing was somewhat contradictory, it also makes clear that the probate court did not ignore the inconsistencies. The court noted:

---

[4] For instance, Ms. Soames challenges Mr. Gifford's characterization of his friendship with Charles, claiming it changed "depend[ing] upon who was asking him the question." She calls Mr. Gifford's testimony regarding the hospital contacting him "more than a bit unusual" and "certainly strange." She claims that Mr. Gifford's testimony regarding when he went to Charles' house, how often he went, and what he looked through was inconsistent and conflicted with other evidence. She also contends that his testimony regarding why he removed certain items from the house, namely the guns, did not make sense, and that his testimony regarding how many times he returned items to the estate, what items he returned, and what or who prompted him to return the items conflicted with her own testimony.

4

Mr. Gifford's testimony was contradictory and confusing at times. For example, he testified that he took certain items for safekeeping after he suspected the home had been broken into, but he left many other valuable items at the home and never called law enforcement regarding the apparent break-in. However, he testified that he took on the position of personal representative only after being called by the hospital and understanding that there was no other person to act. He testified that he did what he believed he could do as personal representative without doing more than authorized, and immediately turned the job over to Ms. Soames as soon as he discovered [Charles'] will. Generally, the [c]ourt finds that Mr. Gifford was credible.

[¶18]   As explained above, the probate court was aptly situated to weigh the evidence and assess the parties' credibility. Mr. Gifford's testimony was only "one piece of the puzzle" the court considered. *See Morrison v. Rubio*, 2022 WY 26, ¶ 23, 504 P.3d 251, 256 (Wyo. 2022). Ms. Soames, in alleging Mr. Gifford retained estate property, based her entire claim on a list Charles created at some unknown time, and her own, very limited, personal knowledge of Charles' possessions. Mr. Gifford, in response, challenged Ms. Soames' credibility at the hearing, explained his actions in the days and weeks following the unexpected news of Charles' hospitalization and death, and maintained that he returned all of the property he removed from the estate.

[¶19]   The court thus had before it two very different versions of the facts, and it found, based on all the evidence, that Mr. Gifford was credible. Having reviewed the entire record, we find nothing to convince us that the court clearly erred in that determination. *See Nelson v. Nelson*, 2019 ND 221, ¶ 31, 932 N.W.2d 386, 397 (N.D. 2019) ("A district court's finding is not clearly erroneous if it represents a choice between two permissible views of the evidence and the finding is based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." (citation omitted)); *see also Estate of Jedrzejewski ex rel. Severn v. Bierma*, 2008 WY 151, ¶ 11, 197 P.3d 1254, 1256 (Wyo. 2008) (explaining that the district court was in the best position to determine credibility where the parties' testimony was "diametrically opposed" and the record supported its determination); *Redland*, ¶ 180, 288 P.3d at 1214 ("Based on the entirety of the record, we can find no clear error in the district court's credibility determinations[.]").

[¶20]   Furthermore, we find unavailing Ms. Soames' argument that, absent the credibility finding, the court would have found her evidence sufficient to meet her burden of proving that the missing items were in Charles' estate when he died and therefore must have been removed from the house by Mr. Gifford. In addition to relying on Mr. Gifford's credibility, the court also found that there was no evidence regarding when Charles had compiled his list, and that Ms. Soames, who had not seen her brother in over two decades and only

regularly spoke to him about twice a year, had little to no personal knowledge of the items in Charles' estate and therefore could not know for sure whether the items she listed as missing were still in his possession when he passed. The court explained:

> Ms. Soames's list was created based on lists and information provided by [Charles]. Ms. Soames has not seen her brother or his home since the early 1990s, almost twenty-five years ago, plus or minus, and has no first-hand knowledge regarding the property or its location during or after [Charles'] life. It is speculative, given the amount of time that has passed, and the origin and current status, if known, of items on the list, to assume that all the property Ms. Soames identifies as missing was actually in the possession of [Charles] at the time of his death. As far as the [c]ourt knows, [Charles] could have sold or given away, or lost some or all of the items . . . Ms. Soames had the burden to show by clear and convincing evidence that Mr. Gifford . . . took, then failed to return, estate assets. The [c]ourt finds that Ms. Soames has not met that burden . . . The [c]ourt cannot conclude that Mr. Gifford has taken and improperly retained the items listed by Ms. Soames.

The record supports these findings, and the court therefore could have reasonably concluded that Ms. Soames failed her burden to show, by clear and convincing evidence, that Mr. Gifford took and failed to return estate property in violation of his personal representative duties, with or without the explicit credibility finding.

[¶21] We conclude that the court did not err when it determined Mr. Gifford's testimony was credible. We affirm.

6