# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 94

**APRIL TERM, A.D. 2020**

**July 20, 2020**

THERESIA RENEE BREEN f/k/a
THERESIA RENEE BLACK,

Appellant
(Defendant),

v.                                                          S-19-0270

JAMIE LEE BLACK,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*
        Letitia Abromats, Letitia C. Abromats, P.C., Greybull, Wyoming.

*Representing Appellee:*
        Robert J. O'Neil, Robert J. O'Neil, P.C., Gillette, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Theresia Renee Breen (Mother), formerly Theresia Black, challenges the district court's order holding her in contempt for mishandling accounts held for the parties' children and for failing to pay her share of the children's medical expenses.  She also challenges the district court's award of attorney's fees to Jamie Lee Black (Father) and the denial of her W.R.C.P. 11 (Rule 11) motion for sanctions.  We reverse in part and affirm in part.

## *ISSUES*

[¶2]    Mother raises five issues which we restate as four:

1. Did the district court abuse its discretion when it held Mother in contempt of court for mishandling one child's brokerage account and for failing to provide quarterly statements for four college accounts held for the children?

2. Did the district court err in holding Mother in contempt of court for failure to pay her share of the children's medical bills?

3. Did the district court err in awarding attorney's fees to Father?

4. Did the district court err in denying Mother's request for Rule 11 sanctions?

## *FACTS*

[¶3]    The parties divorced in 2008.  The 2008 Amended Judgment and Decree of Divorce (2008 Decree) awarded primary custody of the parties' four daughters to Mother.  Relevant to this appeal, the decree addressed five accounts held for the benefit of the children—one brokerage account in the name of the parties' daughter, A.T.B., and four college accounts, one for each child.  The 2008 Decree provided that Mother *should* maintain the brokerage account held in the name of A.T.B. and the four college accounts. It also stated that Mother *should* provide Father with quarterly statements for each of the five accounts.  The 2008 Decree valued A.T.B.'s brokerage account at $1,500[1] and the

---

[1] Testimony and evidence were presented at the 2019 show cause hearing alleging—contrary to the 2008 Decree, where the account was listed valued at $1500—that the account had a value of between $600 and $615.96.

four college accounts combined at $5,366. Father was required to provide health care coverage for the children, and the parties were to share equally any uncovered medical expenses.

[¶4]    In December 2012, the district court entered an Order Changing Custody, Order for Child Support, and Order as to Other Related Matters (2012 Order). Primary custody of the children transferred to Father. His obligation to provide health care coverage continued as did the parties' obligation to share the uncovered medical costs equally. The provisions controlling the brokerage and college accounts were not modified.

[¶5]    In 2014, the district court held Mother in contempt for failing to pay her share of uncovered medical expenses. The court also ordered Father to confirm his out-of-pocket medical expenses by providing Mother the Explanation of Benefits (EOB)[2] associated with any claim for reimbursement. After the 2014 order, if Father did not submit an EOB within six months of sending a claim for reimbursement, he forfeited his right to reimbursement. Mother challenged the 2014 contempt order on appeal. This Court upheld the contempt finding but reversed the judgment and remanded for recalculation of the amount owed to Father. *Breen v. Black*, 2015 WY 96, 353 P.3d 725 (Wyo. 2015).

[¶6]    The controversy at issue here began in April 2019. Father filed a motion to show cause why Mother should not be held in contempt for failing to comply with the 2008 Decree and the 2012 Order. Father claimed Mother cashed out A.T.B.'s brokerage account, did not provide quarterly statements for any of the five accounts, and again failed to pay her share of uncovered medical expenses. Mother denied these allegations. She asserted she had reimbursed A.T.B., pursuant to a settlement agreement with Father, fully resolving the claim regarding the brokerage account. She contended that at Father's request in November 2018, she had provided statements for all five accounts from 2005 or 2006 through the date of the request, and she continued to provide the quarterly statements. She also maintained she had paid her share of uncovered medical expenses. Mother sought Rule 11 sanctions against Father.

[¶7]    After a show cause hearing on September 19, 2019, the district court entered an order holding Mother in civil contempt (2019 Order)[3] for depleting A.T.B.'s brokerage

---

[2] An EOB is a statement from a health insurance plan describing what costs it will cover for medical care or products received. The EOB is generated when a provider submits a claim for the services received. The insurance company sends EOBs to help make clear: (1) The cost of the care received; (2) Any money saved by visiting in-network providers; and (3) Any out-of-pocket medical expenses that will be the responsibility of the policy holder. Cigna, Understanding Your Explanation of Benefits (EOB), https://www.cigna.com/individuals-families/understanding-insurance/explanation-of-benefits (last visited July 15, 2020).
[3] The 2019 Order was titled, Order Finding Defendant in Civil Contempt and Setting Conditions by Which Defendant Can Purge Herself of Contempt, Judgment for Uncovered Health Care Costs of Minor

account, for failing to provide quarterly reports for the brokerage account and the college accounts, and for failure to pay her share of uncovered medical expenses. The district court entered a judgment for Mother's share of the uncovered medical expenses in the amount of $7,164.90 but allowed Mother the opportunity to submit proof of previous payment to receive credit against the judgment. Mother was ordered to make monthly payments of at least $500, and if the judgment was paid in nine months, no interest would accrue. Mother's motion for Rule 11 sanctions was denied. By a later order, the district court awarded Father $3,235 in attorney's fees and $97.47 in costs. Mother timely appealed.

## *STANDARD OF REVIEW*

[¶8]  "District courts have both inherent and statutory authority to enforce their orders in domestic and other cases through contempt sanctions." *Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013); *Stephens v. Lavitt*, 2010 WY 129, ¶¶ 18–19, 239 P.3d 634, 639 (Wyo. 2010); Wyo. Stat. Ann. § 20-2-204(b). This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013). *See also Munoz v. Munoz*, 2002 WY 4, ¶ 6, 39 P.3d 390, 392 (Wyo. 2002); *Olsen v. Olsen*, 2013 WY 115, ¶ 33, 310 P.3d 888, 896 (Wyo. 2013). In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did. *Roberts*, ¶ 14, 304 P.3d at 120.

[¶9]  Wyo. Stat. Ann. § 20-2-204(b)[4] specifically provides the district court authority to "award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances" if it finds that the parent is in contempt of court. *See Shindell v. Shindell*, 2014 WY 51, ¶ 28, 322 P.3d 1270, 1278 (Wyo. 2014). We review the final

---

Children, Order Denying Rule 11 Motion for Sanctions, and Order as to Other Related Matters.

[4]  **§ 20-2-204. Enforcement and modification.**
(a)  Either parent may petition to enforce or modify any court order regarding custody and visitation.
(b)  A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.
Wyo. Stat. Ann. § 20-2-204(a)–(b) (LexisNexis 2019).

attorney fee award for abuse of discretion. *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo. 2007); *Evans v. Moyer*, 2012 WY 111, ¶ 37, 282 P.3d 1203, 1214 (Wyo. 2012).

## DISCUSSION

**I.    *Did the district court abuse its discretion when it held Mother in contempt of court for mishandling one child's brokerage account and for failing to provide quarterly statements for four college accounts held for the children?***

[¶10] Mother contends that the district court erred in finding her in contempt for liquidating A.T.B.'s brokerage account because she paid A.T.B. $1000 in full compliance with a settlement agreement before the show cause motion was filed. She argues the purpose of civil contempt is to coerce a party to comply with a court order and that no coercive purpose was served when the money had been previously reimbursed. Mother similarly argues the district court erred in finding her in contempt for failing to provide Father quarterly statements for the five accounts. Mother provided Father all required quarterly statements when he requested them in November 2018, and she continued to submit quarterly reports thereafter. Mother also asserts the divorce decree did not *require* quarterly statements but used only "precatory" language—Mother *should* provide quarterly statements. As a result, she claimed the divorce decree was not clear, specific, and unambiguous, as required for a contempt finding. Mother's compliance with the 2008 Decree prior to the filing of the motion to show cause is dispositive, and we do not address her claim on the precatory language.

[¶11] To establish civil contempt, the plaintiff must show by clear and convincing evidence that: 1) there was an effective court order requiring certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor *willfully* disobeyed the order. *Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶¶ 10–11, 397 P.3d 189, 193 (Wyo. 2017); *JLK v. MAB*, 2016 WY 73, ¶ 20–21, 375 P.3d 1108, 1113 (Wyo. 2016); *Bullock v. Bullock*, 2014 WY 131, ¶ 17, 336 P.3d 136, 141 (Wyo. 2014); *Meckem v. Carter*, 2014 WY 52, ¶ 20, 323 P.3d 637, 644 (Wyo. 2014). "In order to find a willful violation, the order violated must be 'clear, specific and unambiguous.'" *JLK*, ¶ 21, 375 P.3d at 1113 (quoting *Greene v. Finn*, 2007 WY 47, ¶ 14, 153 P.3d 945, 951 (Wyo. 2007)).

[¶12] A civil contempt order must be supported by clear and convincing evidence. *McAdam v. McAdam*, 2014 WY 123, ¶ 14, 335 P.3d 466, 470 (Wyo. 2014); *Shindell*, ¶ 10, 322 P.3d at 1274. "Clear and convincing evidence is evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Shindell*, ¶ 10, 322 P.3d at 1274. Once the elements of contempt are proven, the burden then shifts to the person charged with contempt to show he or she was unable to comply. *Kleinpeter*, ¶ 10, 397 P.3d at 193; *JLK*, ¶ 20, 375 P.3d at 1113 (quoting *Bullock*, ¶ 17, 336 P.3d at 141).

4

[¶13] Here, the district court found:

> 7.    That Defendant is in civil contempt of court for willfully violating the terms and conditions of the above-referenced Amended Judgment And Decree Of Divorce by removing all of the money from the above-referenced entry entitled "[A.T.B.]'s Edward Jones Custodial Account No. . . .";

> 8.    That the parties have reached an accord and satisfaction as to the money that Defendant wrongfully withdrew from the above-referenced entry entitled "[A.T.B.]'s Edward Jones Custodial Account No. . . .", so there is no longer a need for any remedy for this civil contempt of court;

[¶14] The court also found:

> 9.    That Defendant did not provide any quarterly reports to Plaintiff on either the above-referenced entry entitled "[A.T.B.]'s Edward Jones Custodial Account No. . . ." or the above-referenced entry entitled "Children's American Funds College Accounts" until after demand for such was made upon her, through her attorney, late in the month of November, 2018;

> .   .   .

> 11.    That Defendant is also in civil contempt of court for violating the terms and conditions of the above-referenced Amended Judgment And Decree Of Divorce by willfully not "provid(ing) Plaintiff with quarterly reports" [of A.T.B.'s account] as required . . . ;

> 12.    That Defendant is also in civil contempt of court for violating the terms and conditions of the above-referenced Amended Judgment And Decree Of Divorce by willfully not "provid(ing) copies of the quarterly reports to Plaintiff" [of the Children's College Accounts] as required . . . ;

5

[¶15]   The court held Mother in civil contempt of court for depleting A.T.B.'s brokerage account and for her failure to provide quarterly statements for the brokerage account and the four college accounts.  The purpose of a civil contempt is to coerce a party into complying with a prior court order.[5]  *In Interest of C.N.*, 816 P.2d 1282, 1285 (Wyo. 1991); *Horn v. Dist. Court, Ninth Judicial Dist.*, 647 P.2d 1368, 1373 (Wyo. 1982).

[¶16]   In a civil contempt proceeding, "the contemnor carries the keys of his prison in his own pocket, and can obtain release by complying with the order of the court that sent him there."  *Meckem*, ¶ 19, 323 P.3d at 644 (quoting *Swain v. State*, 2009 WY 142, ¶ 13, 220 P.3d 504, 508 (Wyo. 2009)).  The contemnor's compliance is all that is sought on civil contempt.  *See* 17 C.J.S. *Contempt* § 198, Westlaw (database updated June 2020).

[¶17]   Father filed his show cause motion on April 4, 2019.  By that time, Mother had complied with the district court's orders regarding the children's accounts.  On the claim of depleting A.T.B.'s brokerage account, Father conceded Mother had already paid A.T.B. $1000 in a negotiated resolution with Father.  Regarding the failure to provide quarterly statements for the five accounts, she had provided these statements following Father's request in November 2018 and continued to do so through the date of the hearing.  At the time of the hearing, there were no current or ongoing violations of the 2008 Decree related to the children's accounts, only past transgressions.  As the district court recognized, there was "no longer a need for [a civil contempt] remedy."[6]

[¶18]   The district court abused its discretion in holding Mother in contempt for violations that had been remedied before the case was filed.  *See Cooper v. Cooper*, 815 N.E.2d 262, 273 (Mass. App. Ct. 2004) ("an adjudication of contempt is precluded by the judge's finding that 'the [h]usband eventually did pay the money, and has purged his contempt prior to the hearing'" (citing *Hennessey v. Sarkis*, 764 N.E.2d 873, 877–78 (Mass. App. Ct. 2002))).  We reverse the district court's 2019 Order finding Mother in contempt for her actions regarding the children's accounts.

## II.     Did the district court err in holding Mother in contempt of court for failure to pay her share of the children's medical bills?

---

[5] Neither party contends this was a criminal contempt proceeding.  "An indirect criminal contempt proceeding must be brought in a separate criminal proceeding from the one in which the alleged contempt occurred."  *Greer v. Greer*, 2017 WY 35, ¶ 28, 391 P.3d 1127, 1134 (Wyo. 2017).

[6] In other words, the contempt proceeding as it related to the children's accounts was moot.  The doctrine of mootness considers whether a justiciable controversy remains between the parties.  *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 21, 275 P.3d 438, 448 (Wyo. 2012).  "A court should not hear a case where there has been a change in circumstances occurring either before or after a case has been filed that eliminates the controversy."  *In re Guardianship of MEO*, 2006 WY 87, ¶ 27, 138 P.3d 1145, 1153 (Wyo. 2006) (quoting *Sw. Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1143 (Wyo. 1999)).

[¶19] In regard to the medical expenses, Mother does not contest the first two elements of contempt—an effective order and her knowledge of its requirements. Rather, she contends that the district court erred in holding her in contempt because Father did not prove, by clear and convincing evidence, that she failed to pay. A civil contempt order must be supported by "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *McAdam*, ¶ 14, 335 P.3d at 470 (citation omitted).

[¶20] Father did not testify to any facts regarding the medical bills. Although Father submitted a list of medical bills incurred for the benefit of the children, he testified Mother had paid some of the bills. He stated he did not know how much Mother owed because Mrs. Black, his current wife, kept track of the bills and the payments. Mrs. Black testified that she sent all of the unpaid medical bills to Mother or Mother's attorney. She could not testify as to what expenses had not been paid by Mother or a total amount that was owed by Mother. Mrs. Black had compiled a list of medical expenses (Father's list), but it did not reflect any payments. Father's list was received into evidence. Mrs. Black testified:

> Q. Okay. Ms. Black, I want to ask you a couple of questions. You testified that on Plaintiff's Exhibits 1 through 118 -- 1 through 117, I apologize -- that you had paid the unpaid medical expense; is that correct?
>
> A. Yes.
>
> Q. And you testified that you did receive some payments [from Mother] on those; is that correct?
>
> A. Yes, that's correct.
>
> Q. But you don't know how much you received in payments?
>
> A. No.
>
> Q. Do you know when you received those payments?
>
> A. Usually before we were going to court, actually, is when you guys paid.
>
> Q. Do you have in fact dates for that?
>
> A. No.

7

Q. Okay. So, you received some payments, but you don't know how much. So are you able to tell us what particular medical, uncovered medical expenses did Ms. Breen not pay her share of?

A. No. Do you have proof of what you paid?

HON. DEEGAN: The questions go one way here.

THE WITNESS: Oh, sorry.

A. No, I don't.

[¶21] Mother testified that her attorney took care of the bills and, with the exception of some recent bills, they were all paid.[7] The district court added the amounts on Father's list arriving at a total of $15,002.60. It then found that, except for a stipulated payment of $336.40, Mother had failed to prove payment. The district court concluded Mother owed half, $7,501.30, against which he credited the stipulated $336.40. The district court then ruled that, if following the hearing Mother provided proof that she had paid additional medical expenses, she would receive credit for those payments against the judgment.

[¶22] Mother contends that Father had the burden to show by clear and convincing evidence that Mother failed to pay her share of the uncovered medical bills. She argues the district court erred by finding contempt when Father failed to meet his burden of proof. Instead, the court shifted the burden of proof to her. We agree.

[¶23] When the district court found Mother in civil contempt, it transferred Father's burden to prove nonpayment to Mother to prove payment. The court used its own calculations to arrive at an amount owed because Father could not provide an accurate account. The court did not find that Mother's testimony—that she had paid her share of the medical bills—was not credible. However, even if the court entirely disregarded Mother's testimony, there was no clear and convincing evidence that Mother failed to pay all she was obligated to pay. Considering the evidence in the best light for Father, it is unknown whether Mother paid her share of the expenses.

[¶24] Father claims payment is an affirmative defense, so the burden of proof of payment shifted to Mother. If Father had established by clear and convincing evidence that Mother owed an amount certain on the medical bills, the burden would have shifted. Until he did so, the burden rested squarely on Father's shoulders. *In re C.F.*, 576 S.W.3d

---

[7] The legal assistant that worked for Mother's attorney testified she kept track of Father's requests for reimbursement and put asterisks next to the paid bills on a spreadsheet.

761, 773 (Tex. App. 2019) ("The movant on a motion to enforce a child-support order, including an order to provide medical support, has the burden of establishing the amount of support owed." (citation omitted)). *See Weaver v. Weaver*, 12-238, p. 9 (La. App. 5 Cir. 12/11/12); 106 So. 3d 1116, 1121 ("The evidence admitted at trial . . . was inconclusive in proving that [Father] had not complied with the support order. In the end, [Mother] admitted she had no evidence of nonpayment. Therefore, the trial court correctly determined that [Mother] failed to carry her burden of proof . . . ."); *see also* 27B C.J.S. *Divorce* § 781, Westlaw (database updated June 2020) ("In contempt proceedings relating to divorce actions, a prima facie case is made against the contemnor by producing the order for alimony and proof of the contemnor's failure to make payment according to its terms, and the burden is then on the contemnor to prove any legitimate excuse for nonpayment, the presumption being that the decree is right."); 70 C.J.S. *Payment* § 64, Westlaw (database updated June 2020) ("[I]n a contract action, the plaintiff has the burden of proving nonpayment where nonpayment is the very breach alleged.").

[¶25] The record does not contain clear and convincing evidence that Mother violated the order requiring her to pay her share of uncovered medical bills. We reverse that portion of the court's 2019 Order.

### III. Did the district court err in awarding attorney's fees to Father?

[¶26] Mother contends the district court erred in awarding attorney's fees to Father. She claims that, because the district court erred in holding her in contempt, the award of attorney's fees must be reversed as well. "On appeal of an award of attorney fees, the burden is on the party attacking the district court's ruling to show an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." *Olson v. Schriner*, 2020 WY 36, ¶ 27, 459 P.3d 453, 462 (Wyo. 2020) (citations omitted). In his brief on appeal, Father concedes that attorney's fees are inappropriate if we reverse the district court on all three findings of contempt.

[¶27] In *Bullock*, we found the district court appropriately awarded attorney's fees to Mother even though we reversed the district court's finding of contempt against Father. There, the award of fees pursuant to Wyo. Stat. Ann. § 20-2-111 was within the district court's discretion because Mother was required to bring a contempt motion as a means of enforcing the divorce decree. Father had not purged the contempt prior to Mother's filing. *Bullock*, ¶¶ 28–29, 336 P.3d at 143–44.

[¶28] Here, unlike *Bullock*, Mother had refunded the money to A.T.B. and had provided the quarterly reports *prior* to the filing of the motion for order to show cause by Father. On his third claim, Father failed to establish Mother's failure to pay by clear and convincing evidence. Accordingly, there was no basis for an award of attorney's fees. We reverse the district court's award of attorney's fees to Father.

9

## IV. *Did the district court err in denying Mother's request for Rule 11 sanctions?*

[¶29] Finally, Mother argues this matter should be remanded for the district court to reconsider her motion for sanctions under W.R.C.P. 11. In her motion, Mother claimed Father knew, prior to filing his show cause motion, that the alleged violations regarding the children's accounts had been rectified. Father also knew she had paid her share of medical expenses. Mother argued the sole purpose of Father's motion to show cause was harassment.[8] On appeal, Mother claims that because the district court erred in holding her in contempt, the district court should reconsider whether the contempt motion was frivolous.

[¶30] We "may affirm a district court's ruling on any basis appearing in the record." *JLK*, ¶ 15, 375 P.3d at 1112. Mother failed to follow the procedure required under Rule 11(c), which provides:

> (c) *Sanctions*. — If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> > (1) How initiated.
> >
> > > (A) By motion. — A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). *It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged*

---

[8] W.R.C.P. 11(b)(1) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]

10

*paper, claim, defense, contention, allegation, or*
*denial is not withdrawn or appropriately corrected.*

W.R.C.P. 11(c)(1)(A) (emphasis added).

[¶31] We have emphasized, "Rule 11 contains a 'safe harbor' provision by which counsel provides a warning to opposing counsel through the service of a motion for sanctions *upon opposing counsel only*." *Edsall v. Moore*, 2016 WY 71, ¶ 13, 375 P.3d 799, 803 (Wyo. 2016) (emphasis added) (citing *Welch v. Hat Six Homes*, 2002 WY 81, ¶ 19, 47 P.3d 199, 205 (Wyo. 2002), *overruled on other grounds by Matter of Mears*, 2018 WY 109, ¶ 19, 426 P.3d 824 (Wyo. 2018)). The record does not reflect that Mother served Father with her Rule 11 motion before filing it with the court. Therefore, we affirm the district court's denial of Mother's Rule 11 motion.

## *CONCLUSION*

[¶32] The district court erred in holding Mother in contempt for depleting A.T.B.'s account and for failing to provide quarterly statements for the college accounts. The court also erred in holding Mother in contempt for failing to pay her share of the children's medical expenses and for awarding attorney's fees. The court properly denied Mother's motion for Rule 11 sanctions. Affirmed in part and reversed in part.

11