# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 120

OCTOBER TERM, A.D. 2021

October 29, 2021

HEATHER MICHELLE BURROW,

**Appellant**
**(Plaintiff),**

v.

S-21-0078

JASON DAVID SIELER,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
    Corrie Lynn Lamb of Barney & Graham, LLC, Gillette, Wyoming.

*Representing Appellee:*
    No appearance.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Heather Burrow (Mother) appeals the district court's order holding her in contempt for denying Jason Sieler (Father) visitation with their child during summer and for the Thanksgiving holiday.[1]    Her challenge focuses on the court's determination that she willfully violated the divorce decree.  More specifically, she contends that she could not have willfully violated the decree because it was not clear, specific, and unambiguous about summer visitation or how to handle holiday visitation during a global pandemic.  We affirm.

## *ISSUE*

[¶2]    We restate the issue:

> Did the district court err when it found that Mother willfully violated the divorce decree?

## *FACTS*

[¶3]    Mother and Father married in 2016 and had one child together, who was born in April 2018.  They separated shortly after and then Mother filed for divorce.

[¶4]    In October 2019, the court issued an oral decision on various matters in the divorce proceedings.  Pertinent to this appeal, the court explained that it would award the parties joint legal custody, give Mother primary physical custody, and establish a liberal visitation schedule for Father.  Father would have visitation on Wednesday nights and for three weekends a month.  Before the child began school, Father's summer visitation would consist of weekend visitation and two weeks each in June, July, and August.  When the child began school, his summer visitation would begin seven days after school let out and end 10 days before school returned.  Mother and Father would rotate visitation on various holidays, including Thanksgiving.  The court asked Mother's counsel to draft the order.

[¶5]    In February 2020, the court issued a divorce decree in which it crossed out and initialed three provisions that Mother's counsel had included in her proposed order.  The decree thus stated, in relevant part:

### Custody and Visitation

1.      The parties shall have joint legal custody of the minor child.

---

[1] Father did not file a brief on appeal.

1

2. Mother shall have primary care, custody and control of the minor child.

3. Visitation shall, where applicable, be based upon the school district calendar in which the minor child is residing. Prior to the minor child beginning school, visitation shall be as follows:

a. Weekends: Father shall have visitation with the minor child every first, second and fourth weekend of each month from 5:00 p.m. on Friday to Sunday at 5:00 p.m.

b. Weeknight: Father shall have visitation with the minor child on Wednesday evenings from 5:00 p.m. to 7:30 p.m.

c. Holidays: Holiday visitation shall be as follows. (School holidays will be defined by the school calendar in the community where Mother resides.)

i. Thanksgiving – Mother shall have the minor child with her for the Thanksgiving holiday in odd numbered years. Father shall have the minor child with him for the Thanksgiving holiday in even numbered years. (*Thanksgiving holiday defined: Beginning at 5:00 p.m. on Wednesday and continuing until Sunday evening at 5:00 p[.]m.*)

. . . .

v. Summers: Each party shall be entitled to an uninterrupted two-week vacation period. The parties shall notify each other of their chosen vacation period by April 30 each year.

4. ~~Visitation shall, where applicable, be based upon the school district calendar in which the minor child is residing. After the minor child starts school, Father shall have visitation as follows:~~

a. ~~Weekends: The Defendant shall have visitation every other weekend during the school year from after school on Friday until 5:00 p.m. on Sunday.~~

2

~~b.     Weeknight: Father shall have visitation with the minor child on Wednesday evenings from after school to 7:30 p.m.~~

c.     Holidays: Holiday visitation shall be as follows. (School holidays will be defined by the school calendar in the community where Mother resides.)

i.     Thanksgiving – Mother shall have the minor child with her for the Thanksgiving holiday in odd numbered years.  Father shall have the minor child with him for the Thanksgiving holiday in even numbered years. (*Thanksgiving holiday defined: Beginning after school lets out for the holiday on Wednesday and continuing until Sunday evening at 5:00 p[.]m.*)

. . . .

v.     Summers: Father shall have visitation with the minor child beginning seven days after school recesses for the summer break until seven days before school resumes. During this period, Mother shall have visitation with the minor child every other weekend beginning Friday at 5:00 p.m. and ending Sunday at 5:00 p.m.  Each party shall be entitled to an uninterrupted two-week vacation period.  The parties shall notify each other of their chosen vacation period by April 30 each year.

[¶6]   A month later, Mother's counsel requested a clarification conference to address "inconsistencies" in the divorce decree, noting that Father's counsel agreed the parties needed clarification.  The court held a conference in May but issued no new divorce decree. The conference was not recorded or transcribed.

[¶7]   That summer, Father moved for an order to show cause why Mother should not be held in contempt.  In his attached affidavit, Father stated that the divorce decree provided that he would have visitation with his child "beginning seven days after school recesses for the summer break until seven days before school resumes."  School recessed on May 22. About a week later, on May 28, he notified Mother that he would pick the child up the following day.  Mother immediately began arguing with him and refused to allow visitation.  Before the court could hold a hearing on denial of summer visitation, Mother denied Father visitation for the Thanksgiving holiday because he had recently been sick, she wanted him to take a COVID-19 test, and he refused.

3

[¶8]   In December, the court held an evidentiary hearing on custody modification[2] and whether to hold Mother in contempt.  At the close of evidence, the court resolved its position on Father's contempt motion but reserved its ruling on custody modification until the following month.  It held Mother in contempt as to both summer and Thanksgiving visitation.  As to summer, the court found that the order clearly stated Mother and Father each got two uninterrupted weeks and then Father got the summer; the provisions made sense when they were read together; and though the provisions may not have been exactly what the court intended, that is what it ordered.  The court further noted that it did not issue a new order after the clarification conference, which suggested that it said exactly that at the conference.  The court asked Father's counsel to draft the contempt order.

[¶9]   On reconvening the following month to rule on custody modification, the court inadvertently ruled again on Father's contempt motion.  It reiterated its previous ruling holding Mother in contempt for denying Thanksgiving visitation, noting that "[s]elf-help on a holiday is something that deserves the Court's immediate attention.  These kids only have so many holidays, and we split them up for the parents for a reason.  And when you make that self-help, [we] just can't make up for it."  But then it announced a different holding about summer visitation, stating that the oral ruling at the divorce bench trial was very clear but there was no court reporter and both attorneys became confused as to what the court had ordered; some of the confusion may have been attributable to the circumstances under which the court gave the order, as there were "some fiery tempers"; and "there wasn't a willful violation of a clear order, especially in light of what got scratched out on the decree as to the summer."

[¶10]  When Father's counsel expressed confusion about the conflicting rulings, as he had already drafted a contempt order stating the opposite, the court took a break to review its notes.  On returning to the courtroom, the court apologized and explained that it made a mistake by not remembering the exact facts of the case.  It confirmed its earlier ruling holding Mother in contempt for denying summer visitation.

[¶11]  Thus, in its final order, the court held Mother in contempt for denying Father his court ordered summer and Thanksgiving visitation.

## DISCUSSION

[¶12]  To establish contempt, Father had to prove by clear and convincing evidence that: (1) there was an effective court order requiring certain conduct by Mother; (2) Mother had knowledge of the order; and (3) Mother wilfully disobeyed the order.  *See Heimer v. Heimer*, 2021 WY 97, ¶ 15, 494 P.3d 472, 477 (Wyo. 2021) (citing *Breen v. Black*, 2020 WY 94, ¶ 11, 467 P.3d 1023, 1027 (Wyo. 2020)).  "Clear and convincing evidence is

---

[2] Mother petitioned to modify custody.  Father counterclaimed for shared custody.  Finding no material change in circumstances, the court denied both requests.

4

evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Id.* (quoting *Breen*, ¶ 12, 467 P.3d at 1027).

[¶13]  Mother appeals only the court's ruling that she willfully disobeyed the divorce decree.  More specifically, she asserts that the divorce decree was not clear, specific, and unambiguous about summer visitation or how to handle Thanksgiving visitation during a pandemic.  For her violation to have been willful the divorce decree must have been clear, specific, and unambiguous.  *Id.* (citing *Breen*, ¶ 11, 467 P.3d at 1027).

[¶14]  We will not interfere with the district court's order holding Mother in contempt "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion."  *Id.* ¶ 17, 494 P.3d at 478 (quoting *Breen*, ¶ 8, 467 P.3d at 1026).  In reviewing how the district court exercised its broad discretion under its contempt power, our task is to determine whether the court could reasonably conclude as it did.  *Id.* ¶ 31, 494 P.3d at 481 (citing *Jenkins v. Jenkins*, 2020 WY 120, ¶ 5, 472 P.3d 370, 372–73 (Wyo. 2020)).

[¶15]  The question here is whether the district court could reasonably conclude that the divorce decree was sufficiently clear, specific, and unambiguous to find a willful violation. *See Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶ 16, 397 P.3d 189, 194 (Wyo. 2017); *Heimer*, ¶ 15, 494 P.3d at 477.  We answer that question in the affirmative as to both summer and Thanksgiving visitation.

### Summer Visitation

[¶16]  The divorce decree stated the following relevant to summer visitation:

> 3.      Visitation shall, where applicable, be based upon the school district calendar in which the minor child is residing. Prior to the minor child beginning school, visitation shall be as follows:
>
> . . . .
>
> v.      Summers: Each party shall be entitled to an uninterrupted two-week vacation period.  The parties shall notify each other of their chosen vacation period by April 30 each year.
>
> 4.      Visitation shall, where applicable, be based upon the school district calendar in which the minor child is residing. After the minor child starts school, Father shall have visitation as follows:

5

> v. Summers: Father shall have visitation with the minor child beginning seven days after school recesses for the summer break until seven days before school resumes. During this period, Mother shall have visitation with the minor child every other weekend beginning Friday at 5:00 p.m. and ending Sunday at 5:00 p.m. Each party shall be entitled to an uninterrupted two-week vacation period. The parties shall notify each other of their chosen vacation period by April 30 each year.

[¶17] Mother testified that she believed Father would begin having summers with their child when the child reached school age. She confirmed that when the court entered the divorce decree she was represented by a different attorney and claimed that she did not meet with her prior attorney to go over the decree after the court signed it. Mother remembered her prior attorney asking the court for a hearing to flesh things out because the parties had questions about the decree. Though Mother did not attend that hearing, she had a conversation with her prior attorney after the hearing "that made things a little bit clearer[.]"

[¶18] Mother then offered two conflicting explanations why she denied Father summer visitation. Initially, she testified that when Father communicated with her about summer visitation, they disagreed about the divorce decree's language. Father told her to look at the decree and she did. Father did not mention the paragraph that the court had crossed out and initialed. Mother did not recall that paragraph. She claimed the order she had did not have that crossed out language. Later in the hearing, however, Mother testified that the first time Father mentioned having summer visitation she did not have the court order with her so she made a phone call to get some clarification. Then she went home and read her order and saw that paragraph three was not crossed out but paragraph four was. She thus interpreted paragraph three to mean that Father got summer when their child started school.

[¶19] Father generally reiterated what he said in his affidavit. At the end of the 2020 school year, he communicated with Mother about summer visitation. He determined the date he would pick up their child based on the divorce decree. When he provided Mother that date, she laughingly responded, "No, you won't have her." He did not have an extended visit that summer.

[¶20] On appeal Mother asserts that the oral ruling on summer visitation at the original divorce bench trial was completely different than the written ruling in the divorce decree, which was then modified by unexplained scratch marks. According to Mother, this "made the [d]ecree difficult, at best, and near impossible, at worst, to interpret or follow." She

argues that she "reasonably acted on her understanding of a very complicated [and] conflicting ruling, decree, and order."

[¶21]  We acknowledge that the court's oral summer visitation ruling was different from what it stated in the divorce decree.[3]  However, the law makes clear that the written divorce decree controls.  *See JLK v. MAB*, 2016 WY 73, ¶ 32 n.3, 375 P.3d 1108, 1115 n.3 (Wyo. 2016) (citing *Capshaw v. WERCS*, 2001 WY 68, ¶ 9, 28 P.3d 855, 858 (Wyo. 2001)).  In its divorce decree, the court specifically crossed out and initialed the paragraph about what would happen after the child started school.  Consequently, the decree set out one long, albeit redundant, set of visitation provisions that apply before the child begins school.  Read as a whole, the decree clearly states that before the child begins school, Father is entitled to visitation "beginning seven days after school recesses for the summer break until seven days before school resumes."  And each party is entitled to an uninterrupted two-week vacation period, which they must choose by April 30 each year.  By Mother's own testimony, she did not read the divorce decree as a whole.  Rather, she denied visitation either based on a copy of the divorce decree that did not contain the stricken language or after reading paragraphs three and four in isolation.  Both explanations are problematic.

[¶22]  Moreover, Mother's argument does not account for the May 2020 clarification conference held at the request of her prior attorney.  Despite the fact that Mother's current attorney did not know what happened at that conference, in closing argument during the contempt hearing she argued that Mother did not receive any guidance from her prior attorney about what those strikeouts meant.  Yet Mother testified that she did have a conversation with her prior attorney that clarified matters, at least a little bit.  That the conference adequately clarified the divorce decree for the parties is further supported by the fact that the court issued no new order following the conference.  Absent any evidence to support Mother's reading, the district court could reasonably conclude the divorce decree was clear, specific, and unambiguous about summer visitation, and that Mother willfully violated the decree.

### Thanksgiving Visitation

[¶23]  The divorce decree stated that "Mother shall have the minor child with her for the Thanksgiving holiday in odd numbered years" and "Father shall have the minor child with him for the Thanksgiving holiday in even numbered years."  It defined the Thanksgiving holiday to begin on Wednesday evening and end on Sunday evening.

---

[3] We also acknowledge that the district court initially issued conflicting rulings about holding Mother in contempt for denying summer visitation.  But when Father's counsel pointed out the inconsistency, the court immediately recessed to review the record and, on returning to the courtroom, unequivocally confirmed its prior ruling holding Mother in contempt.  It apologized for the confusion, explaining that it had simply lost track of the facts of the case.  The court's mistake was understandable given that the case had what it aptly characterized as "a tortured history[.]"

[¶24]   Mother testified that on the Wednesday the week before Thanksgiving, Father called to tell her that he could not take the child for his scheduled visitation that night because he felt sick.  Father sounded very sick and said he should probably get tested for COVID-19 but he was not sure if he was going to do so.  The following morning, Father sounded horrible when he spoke with the child on the phone, and he told them how sick he felt.  That Friday, Father called, sounded horrible, and said he was still sick.  On the Tuesday before Thanksgiving, Mother told Father he needed to be tested for COVID-19 before he took the child because he had been sick for so long and had COVID-19 symptoms.  Father did not get tested.

[¶25]   Father denied telling Mother that he should get tested for COVID-19.  He testified that the week before Thanksgiving, he told Mother that he felt tired and had a cough.  But by Friday he felt better.  The week of Thanksgiving, he informed Mother he wanted his Thanksgiving visitation.  Mother wanted him to take a COVID-19 test, but he told her he did not need one because he only had a cold.  His personal belief about COVID-19 was not the same as Mother's and he refused to be tested.  Father's significant other confirmed that Father became sick on the Wednesday the week before, not the week of, Thanksgiving.

[¶26]   On appeal Mother argues that the divorce decree was not clear, specific, and unambiguous because it was ruled on, drafted, and entered before the COVID-19 global pandemic began.  She asserts that the decree "did not anticipate a potentially deadly virus, and how it might impact [the] clearly defined holiday visitation schedule."  Mother maintains that she did not have clear direction on how to handle the situation and did her best under the circumstances to protect her child.

[¶27]   The district court had little trouble concluding that the divorce decree was clear, specific, and unambiguous that Father was entitled to Thanksgiving visitation in 2020, noting that "[s]elf-help on a holiday is something that deserves the [c]ourt's immediate attention" because children "only have so many holidays, and we split them up for the parents for a reason."

[¶28]   That the divorce decree did not specifically address how to handle holiday visitation during a global pandemic did not make it any less clear, specific, and unambiguous that Mother was entitled to Thanksgiving visitation in odd numbered years and Father was entitled to Thanksgiving visitation in even numbered years.

[¶29]   Mother should have sought modification of the visitation order if she feared for the child's safety.  The district court did not abuse its discretion by disallowing Mother to unilaterally impose an additional COVID-19 testing requirement for Father to exercise visitation.  *See Bishop v. Bishop*, 2017 WY 130, ¶ 15 n.2, 404 P.3d 1170, 1175 n.2 (Wyo. 2017) ("Mother was entitled to unsupervised visitation with the Child, and Father did not have the right to unilaterally impose additional requirements for her to exercise her visitation rights.").  We have repeatedly disapproved parents taking unilateral action to

deny visitation, even where they are concerned about their child's health and safety. *See id.* ¶¶ 14–15, 404 P.3d at 1174–75 (discussing father's decision to withhold visitation for months without court approval based on his own determination that mother's boyfriend posed a threat to their child); *Kleinpeter*, ¶¶ 19–20, 397 P.3d at 195 (addressing mother's unilateral decision not to allow father visitation except as supervised by one specific entity, Casper Family Connections); *Shindell v. Shindell*, 2014 WY 51, ¶¶ 5, 13, 322 P.3d 1270, 1273, 1274 (Wyo. 2014) (discussing mother's refusal to allow visitation out of concern that father's pets would trigger their oldest daughter's allergies and asthma).

[¶30] Mother had a full week to ask the district court for guidance on how to handle Father's upcoming Thanksgiving visitation instead of taking matters into her own hands and unilaterally denying him visitation because he would not take a COVID-19 test. The district court could reasonably conclude that the divorce decree was clear, specific, and unambiguous about Thanksgiving visitation despite the global pandemic, and that Mother willfully violated the decree.

## *CONCLUSION*

[¶31] The district court did not err when it found Mother in contempt for denying Father summer and Thanksgiving visitation. Affirmed.

9