# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 56

**APRIL TERM, A.D. 2024**

**May 30, 2024**

LAURA SHIPLEY,

Appellant
(Defendant),

v.                                                                                  S-23-0260

FRANCIS SMITH,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
    Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Representing Appellee:*
    Mallory B. Riley, 1st Monument Law LLC, Moorcroft, Wyoming

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Laura Shipley ("Mother") appeals the district court's order finding her in contempt for failing to exchange the child she shares with Francis Smith ("Father") on the court-ordered start date for the child's summer visitation. We affirm.

### *ISSUE*

[¶2]    Did the district court abuse its discretion when it held Mother in contempt?

### *FACTS*

[¶3]    Father and Mother never married and, in 2015, they had one child together, BS. Four years later, in July 2019, the district court entered its Order on Custody, Visitation and Child Support that granted both parents legal custody of BS but awarded Mother primary physical custody, subject to Father's liberal visitation rights during the child's school year and summer vacation. The order stated, "[a]fter the child reaches kindergarten, starting no later than 10 days after school recesses for the summer, Father shall enjoy alternating weeks of visitation during the summer commencing at 10 a.m. on Wednesdays and concluding at 10 a.m. on the immediately following Wednesday."

[¶4]    Mother later filed a motion for emergency clarification. The district court entered an order on her motion in July 2020, providing the following language regarding Father's summer visitation rights: "[a]fter the minor child reaches Kindergarten, Father has summer visitation every other week beginning at 10 a.m. Wednesday, and concluding 10 a.m. the following Wednesday." The order did not strike language from its July 2019 order regarding summer visitation.

[¶5]    Once BS reached kindergarten, the parties exchanged him on the first Wednesday after school was released for two consecutive summers, but in 2023, the parties disagreed over when Father's first week of summer visitation should begin. Mother did not relinquish BS until Wednesday, June 7, which was 12 days after BS was released from school. Father then kept BS for an extra week without Mother's permission.

[¶6]    The parties filed cross-motions for orders to show cause. Mother appended her affidavit to her motion, in which she acknowledged that BS was "supposed to start alternating weeks with his father within no later than ten days after school is released." She also acknowledged the parties exchanged BS 12 days after he was released from school.

[¶7]    At the hearing on the motions, Father testified and confirmed his understanding of the court's orders and the provisions governing summer visitation. He explained that in the two previous summers, the parties had exchanged BS the Wednesday following the

last day of school at 10:00 a.m. Father had expected the 2023 exchange to be in line with the prior years. BS was to be released from second grade May 26, so Father had planned to pick him up at 10:00 a.m. Wednesday, May 31 and had offered to accommodate Mother's Wednesday work schedule. When Mother requested the exchange occur on Sunday, June 4 instead, Father refused because "[t]hat's not what the court order stated," and it would have disrupted reservations he had already made for his weeks with BS. Father texted Mother to ask her to exchange BS on May 31, and Mother responded that "she was following the advice of her attorney and not bringing him." Father confirmed he received BS on Wednesday, June 7, which was 12 days after he was released for summer.

[¶8]   Mother testified briefly, and Father's attorney did not cross-examine her. In closing argument, Mother's counsel argued Father's attorney "did not establish the foundational requirements [of contempt] in even asking [Mother] whether she had knowledge of the order, and that's a requirement." Before issuing its oral ruling the district court stated:

> The Court, understanding the argument of [Mother's counsel] in regards to the testimony that was presented today for purposes of the Motion for Order to Show Cause against [Mother], the Court also has taken into consideration the fact that [Mother] has filed a competing Motion for Order to Show Cause, having filed an affidavit acknowledging that those orders exist, and trying to enforce those orders herself.
>
> So for that reason, the Court is going to move forward in deciding the two pending Motions for Order to Show Cause today.

[¶9]   The court issued its oral ruling and a subsequent written order, finding both parents in contempt. The court acknowledged its prior two orders, stated that they were clear as to summer visitation, and found by clear and convincing evidence that Mother was aware of the orders and that she willfully violated them by failing to exchange BS on May 31. The court ordered that the parties bear their own attorney fees and costs associated with their motions. Mother timely appealed the district court's order holding her in contempt.[1]

---

[1] Father was held in contempt for engaging in self-help by keeping BS for an extra week. He does not appeal that order.

*DISCUSSION*

[¶10]  We review civil contempt orders for an abuse of discretion. *Mascaro v. Mascaro*, 2024 WY 45, ¶ 11, 547 P.3d 321, 327 (Wyo. 2024). "Our usual standard of review is lenient." *Heimer v. Heimer*, 2021 WY 97, ¶ 17, 494 P.3d 472, 478 (Wyo. 2021). "We will not interfere with the district court's order holding Mother in contempt 'absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Burrow v. Sieler*, 2021 WY 120, ¶ 14, 497 P.3d 921, 925 (Wyo. 2021) (quoting *Heimer*, 2021 WY 97, ¶ 17, 494 P.3d at 478). "In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did." *Shindell v. Shindell*, 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014) (citing *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013)). "We give deference to the district court's factual findings and 'will overturn them only upon a finding that they are clearly erroneous.'" *Bennett v. Bennett*, 2024 WY 7, ¶ 6, 541 P.3d 1092, 1094 (Wyo. 2024) (quoting *Lew v. Lew*, 2019 WY 99, ¶ 8, 449 P.3d 683, 686 (Wyo. 2019)). "Factual findings are clearly erroneous when, although they have evidentiary support, we are left with the definite and firm conviction upon review of the entire evidence that the district court made a mistake." *Id.*

[¶11]  "To establish contempt, Father had to prove by clear and convincing evidence that: (1) there was an effective court order requiring certain conduct by Mother; (2) Mother had knowledge of the order; and (3) Mother wil[l]fully disobeyed the order." *Burrow*, 2021 WY 120, ¶ 12, 497 P.3d at 924 (citing *Heimer*, 2021 WY 97, ¶ 15, 494 P.3d at 477). "In order to find a willful violation, the order violated must be clear, specific and unambiguous." *Bennett*, 2024 WY 7, ¶ 7, 541 P.3d at 1095 (quoting *Heimer*, 2021 WY 97, ¶ 15, 494 P.3d at 477). The order must also "be supported by clear and convincing evidence," which is "evidence that would persuade a finder of fact that the truth of the contention is highly probable. Once the elements of contempt are proven, the burden then shifts to the person charged with contempt to show he or she was unable to comply." *Id.*

[¶12]  On appeal, Mother argues the district court erred by holding her in contempt. She claims Father did not establish a prima facie case for contempt because he did not cross-examine Mother on her knowledge of the orders and understanding of their requirements. She takes issue with the court's reliance on the affidavit she attached to her contempt motion, claiming that although the court heard the cross-motions in one hearing, it could not consider evidence in support of her motion when ruling on Father's motion. She also claims the court did not address all elements of contempt in its oral ruling.

[¶13]  The court's order finding Mother in contempt was supported by clear and convincing evidence, and the court could have reasonably concluded as it did. *Bennett*, 2024 WY 7, ¶ 7, 541 P.3d at 1095; *Shindell*, 2014 WY 51, ¶ 7, 322 P.3d at 1273. Mother has offered no relevant authority or cogent argument to support her assertion that the

elements of contempt must be proven through her testimony alone on cross-examination or for her assertion that the district court could not consider the entirety of the evidence before it when ruling on the cross-motions. This Court "need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined." *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (Wyo. 1995) (quoting *Young v. Hawks*, 624 P.2d 235, 238 n.2 (Wyo. 1981)); *see also Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013) ("It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case.") (quoting *Elder v. Jones*, 608 P.2d 654, 660 (Wyo. 1980)). The court was presented with evidence of Mother's contempt, even if the evidence was not presented through her own testimony on cross-examination. In her affidavit, Mother acknowledged BS was "supposed to start alternating weeks with his father within no later than ten days after school is released" and admitted the parties exchanged BS 12 days after he was released from school. Father testified to his understanding of the two prior court orders, the previous successful summer exchanges, and Mother's refusal to exchange BS on Wednesday, May 31. From this evidence, the court could have reasonably concluded Mother knew of the orders and understood their requirements. Father thereby proved the elements of contempt, the burden shifted to Mother to show why she was unable to comply with the court's orders, and she did not. *See Bennett*, 2024 WY 7, ¶ 7, 541 P.3d at 1095 (quoting *Heimer*, 2021 WY 97, ¶ 15, 494 P.3d at 477).

[¶14]  To the extent Mother challenges the district court's oral ruling, her argument fails because, in civil cases, "a court's written order controls over its oral ruling." *JLK v. MAB*, 2016 WY 73, ¶ 32 n.3, 375 P.3d 1108, 1115 n.3 (Wyo. 2016) (citing *Capshaw v. WERCS*, 2001 WY 68, ¶ 9, 28 P.3d 855, 858 (Wyo. 2001)). In its written order, the district court found the orders relevant to the contempt hearing were the July 2019 and 2020 orders and they were clear as to summer visitation. The court found by clear and convincing evidence that Mother was aware of those orders, that she failed to obey them, and that she willfully violated the orders by failing to exchange BS with Father for summer visitation on May 31, 2023. There has not been "a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Burrow*, 2021 WY 120, ¶ 14, 497 P.3d at 925 (quoting *Heimer*, 2021 WY 97, ¶ 17, 494 P.3d at 478). The district court did not err in holding Mother in contempt.

[¶15] Finally, we address Father's request for attorney fees and costs pursuant to W.R.A.P. 10.05. This rule states, in pertinent part, "[i]f the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount for attorney's fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." W.R.A.P. 10.05(b). "The district court's order of contempt is a discretionary ruling." *Mascaro*, 2024 WY 45, ¶ 23, 547 P.3d at 326 (citing *Heimer*, 2021 WY 97, ¶ 31, 494 P.3d at 481). "Rule 10.05 sanctions 'are generally not available for challenges to discretionary rulings' unless the appeal lacks cogent argument, legal authority, or

adequate cites to the record." *Mascaro*, 2024 WY 45, ¶ 23, 547 P.3d at 327 (quoting *Carbaugh v. Nichols*, 2014 WY 2, ¶ 23, 315 P.3d 1175, 1180 (Wyo. 2014)). We decline to certify there was no reasonable cause for Mother's appeal. *See Fowles v. Fowles*, 2017 WY 112, ¶ 37, 402 P.3d 405, 414 (Wyo. 2017) (citing *Carbaugh*, 2014 WY 2, ¶ 23, 315 P.3d at 1180 (Wyo. 2014)). Although we do not find Mother's arguments persuasive and have rejected her claims that lack legal authority or cogent argument, "we cannot conclude [her] briefing is so devoid of legal authority, argument, or citation to the record that attorneys' fees are warranted as a sanction." *Mascaro*, 2024 WY 45, ¶ 23, 547 P.3d at 327 (citing *Shindell*, 2014 WY 51, ¶ 29, 322 P.3d at 1278).

[¶16]   Affirmed.